192 F.3d 525 (6th Cir. 1999)
 Steven D. Brindley and National Pawn and Discount of Saginaw, Inc., Plaintiffs-Appellants,
v.
A. George Best, II; James Massey; David Andrews; Mark Lively; Michael McCullen; John Todd; Charles S. Brown; Richard Mainprize; and City of Saginaw, Defendants-Appellees.
Steven D. Brindley and Kellie Sue Brindley, Plaintiffs-Appellants,
v.
A. George Best, II; James Massey; David Andrews; Mark Lively; Michael McCullen; John Todd; Charles Brown; Richard Mainprize; City of Saginaw; and Saginaw Police Department, Defendants-Appellees.
Southfield Gold & Diamond, Inc., Plaintiff-Appellant,
v.
Mark Dougavito; Charles Brown; John Todd; Troy Jolin; Thomas McIntyre, County Sheriff; and (Fnu) Chiunti, Defendants-Appellees.
 Nos. 98-1756, 98-1760, 98-1771
 UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT
 Argued: August 3, 1999
Decided and Filed: September 22, 1999
 
 Appeal from the United States District Court for the Eastern Districts of Michigan at Flint and Detroit; Nos. 94-40054; 96-75354; 94-75230--Nancy G. Edmunds, District Judge.[Copyrighted Material Omitted][Copyrighted Material Omitted]
 Stuart W. Hyvonen, FRANK & FORSTER P.C., Saginaw, Michigan, for Appellants.
 Michael J. Forster, Stuart W. Hyvonen, Frank & Forster P.C., Saginaw, Michigan, for Plaintiffs-Appellants
 Marcelyn A. Stepanski, Johnson, Rosati, LaBarge, Aseltyne & Field, Farmington Hills, Michigan, John D. Tomlinson, Fletcher DeGrow, Port Huron, Michigan, Kenneth G. Galica, FLETCHER, DeGROW & GALICA, Novi, Michigan, for Defendants-Appellees
 Mark E. Donnelly, OFFICE OF THE ATTORNEY GENERAL, TORTS DIVISION, Lansing, Michigan, for Defendant-Appellee
 Peter C. Jensen, JENSEN, GILBERT, SMITH & BORRELLO, Saginaw, Michigan, for Appellees.
 John D. Tomlinson, Fletcher, DeGrow, Port Huron, Michigan, for Defendant-Appellee Saginaw Police Department.
 John D. Tomlinson, Fletcher, DeGrow, Port Huron, Michigan, Kenneth G. Galica, FLETCHER, DeGROW & GALICA, Novi, Michigan, for Defendant-Appellee Saginaw Police Department.
 Before: SILER and GILMAN, Circuit Judges; GRAHAM, District Judge.*
 OPINION
 SILER, Circuit Judge.
 
 
 1
 This is an appeal of three related cases involving searches in 1993 pursuant to warrants of the National Pawn & Discount of Saginaw, Inc. ("National Pawn"), Ron's Avenue Trading Post ("Ron's Avenue"), Southfield Gold & Diamond, Inc. ("Southfield Gold"), and the home of Stephen Brindley and his wife, Kellie Sue Brindley. The suits are for violations of the civil rights under 42 U.S.C. § 1983 of the Brindleys and their family businesses against various law enforcement officers and governmental entities. The district court granted summary judgment for all of the defendants. As set forth below, we AFFIRM in part and REVERSE in part.
 
 
 2
 At the hearing on the motions for summary judgment, the plaintiffs conceded that their conspiracy and Fifth Amendment claims should be dismissed, and they also conceded that the City of Saginaw Police Department, Sheriff McIntyre, and Prosecutor James Massey should be dismissed as defendants. The district court granted the defendants' motions for summary judgment, holding that: (1) the officers had probable cause to believe that the items they seized were within the scope of the warrant or were evidence of crimes they were investigating; (2) even if they seized items beyond the scope of the warrant, the officers were entitled to qualified immunity because their actions were "objectively reasonable"; (3) collateral estoppel bars this action because plaintiffs had a full and fair opportunity to litigate these issues in the state criminal proceedings; (4) the claims against the City of Saginaw for failure to train, investigate and discipline did not rise to the level of "deliberate indifference" and therefore required dismissal under Monell v. New York City Dep't of Social Serv., 436 U.S. 658 (1978);and (5) in Case One (98-1760), the plaintiffs waived their claims through the plea agreement.
 
 
 3
 The plaintiffs do not challenge the district court's decision to dismiss the claims against the City of Saginaw under Monell. The issues before this court are whether the district court erred in finding that: (1) the seizures did not exceed the scope of the warrant; (2) the officers are entitled to qualified immunity; (3) collateral estoppel barred all three suits; and (4) the plaintiffs in Case One waived their civil action through the plea agreement.
 
 I. CASE ONE: 98-1760
 A. Factual Background
 
 4
 The first case arose out of a search and seizure of jewelry at National Pawn and Ron's Avenue, the warehouse location for National Pawn. The plaintiffs are Steven Brindley and National Pawn. Brindley is the sole shareholder of National Pawn. The defendants included the City of Saginaw; Saginaw County Prosecutors A. George Best, II, and James Massey; Saginaw Police Officers David Andrews, Mark Lively, Michael McCullen, and John Todd; and Michigan State Police Officers Charles Brown and Richard Mainprize.
 
 
 5
 National Pawn was a second hand dealer, pawn broker, dealer in precious metals and gems, and a firearms dealer. In 1993, a task force was investigating pawn shops and second hand stores for illegal activity. Officer Mainprize submitted an affidavit for a search warrant for National Pawn. The affidavit alleged illegal activity on the premises, which included various violations of state and federal laws, and receiving and concealing stolen goods.
 
 
 6
 A state court judge granted a warrant for the search of National Pawn, which authorized the seizure of the following:
 
 
 7
 (A) All items of stolen property including but not limited to: electronic items which have had their serial numbers and or other identifying numbers or tags or seals of ownership removed, covered or altered; firearms; jewelry; vehicles; tools; cameras; and other items of personalty.
 
 
 8
 (B) All items obtained, accepted or received in pawn or as "secondhand" items where pawn forms, secondhand forms, or precious metal and gem forms have not been submitted or timely prepared for submission as required by state law.
 
 
 9
 (C) All records and data . . . related to the establishment and or maintenance of a pawn, secondhand or precious metal and gem business . . . .
 
 
 10
 (D) All records and data . . . related to the establishment and or maintenance of a federally licensed firearms business . . . .
 
 
 11
 The police officers executed the warrant the following day and seized a multitude of goods and documents, including thousands of pieces of jewelry. Officer Andrews was the seizing officer at National Pawn and Officer Lively was the seizing officer at Ron's Avenue. The other officers assisted in the seizure of these items, which included illegal firearms, items with marred or removed serial numbers, rental property labeled "not for pawn or sale," items lacking statutorily mandated forms, and some stolen property.
 
 
 12
 Pursuant to the searches, a grand jury was appointed to investigate the charges against Brindley and his businesses. The grand jury ordered that the seized property be retained as evidence to be presented to the court in its grand jury investigation. The Brindleys, their businesses, and other individuals were charged in a 1,308-count indictment for various crimes including usury, property crimes, health care fraud, and conspiracy.
 
 
 13
 In 1995, Brindley pled no contest to conspiring to operate a legal business in an illegal manner, including violation of the Health Care Act. The plea provided that the sentence imposed would be probation with no prison time. National Pawn pled no contest to all of the counts except 847 and 848, which were dismissed. The pleaagreement contained a waiver provision, which provided that "no claims shall be brought by any of the parties against each other involving this action." Pursuant to the plea agreement, Steven Brindley and National Pawn were fined $400,000 and sentenced to probation.
 
 
 14
 Subsequently, the plaintiffs brought this suit alleging, inter alia, that the defendants illegally seized their property in violation of their Fourth Amendment rights. The plaintiffs did not contest the seizure of many of the items; however, they did contest the seizure of the displayed jewelry. Specifically, they alleged that the displayed jewelry was illegally seized because it was outside the scope of the warrant and that the officers did not have probable cause to believe it was evidence of any crime.
 
 
 15
 The district court granted the defendants' motions for summary judgment, holding that (1) the plaintiffs were collaterally estopped from bringing their claims because they had a full and fair opportunity to litigate the seizure of the displayed jewelry in the criminal proceedings but failed to do so; (2) the plaintiffs waived their claims through their plea agreement; and (3) the officers were entitled to qualified immunity because they acted reasonably in seizing the displayed jewelry and did not exceed the scope and authority of the search warrant.
 
 B. Discussion
 1. Collateral Estoppel
 
 16
 In determining whether collateral estoppel bars the relitigation of an issue allegedly decided in a different forum, this court uses the other forum's law on collateral estoppel or issue preclusion. See McAdoo v. Dallas Corp., 932 F.2d 522, 524 (6th Cir. 1991). Michigan law holds that "[c]ollateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties where the prior proceeding culminated in a valid, final judgment and the issue was (1) actually litigated, and (2) necessarily determined." People v. Gates, 452 N.W.2d 627, 630 (Mich. 1990). In determining whether an issue was "actually litigated" in the prior proceeding, this court must consider whether the party against whom collateral estoppel is being asserted had a full and fair opportunity to litigate the issue. See id. at 631.
 
 
 17
 Here, the plaintiffs had no reason to raise the issues of illegal searches and seizures in the criminal proceedings because the items which the plaintiffs in this case claim were illegally seized were never the subject of criminal charges. Hence, this issue was never actually litigated in the state court criminal proceedings and therefore the plaintiffs were not collaterally estopped from challenging the seizures in federal court.
 
 
 18
 The defendants rely on Schilling v. White, 58 F.3d 1081 (6th Cir. 1995), for the proposition that a plaintiff cannot bring a § 1983 action based on a constitutional violation surrounding an arrest or conviction unless the conviction is set aside. However, the Schilling case quotes Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), which stated:
 
 
 19
 [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.
 
 
 20
 Id. (emphasis added). The defendants' reliance on Heck is misplaced because, as mentioned above, the alleged unlawful seizuresin this case would not invalidate the plaintiffs' convictions.
 
 2. Waiver
 
 21
 The district court held that the plaintiffs waived their claims because of the release language in the plea agreement, which provided in pertinent part that "no claims shall be brought by any of the parties against each other involving this action." (Emphasis added.) As the plaintiffs and the State of Michigan comprised the "parties" in the criminal proceedings, only a broad reading of the term "parties" could encompass the other defendants (e.g., the state and local officers) named in the plaintiffs' present § 1983 action. The defendants contend that the individual officers must be considered as parties to the plea agreement. Otherwise, according to the defendants, the release provision is rendered meaningless because clearly the claims against the State of Michigan would be barred under the Eleventh Amendment of the United States Constitution. Nevertheless, we need not decide this issue because the defendants are entitled to qualified immunity.
 
 3. Qualified Immunity
 
 22
 Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "The central purpose of affording public officials qualified immunity is to protect them 'from undue interference with their duties and from potentially disabling threats of liability.'" Elder v. Holloway, 510 U.S. 510, 514 (1994) (quoting Harlow, 457 U.S. at 806, 102 S.Ct. at 2732).
 
 
 23
 As a result, "[i]ndividual claims of immunity must be analyzed on a fact-specific, case-by-case basis to determine whether the constitutional rights were so clearly established when the alleged misconduct was committed that any official in the defendant's position would understand that what she was doing violates those rights." Stack v. Killian, 96 F.3d 159, 161 (6th Cir. 1996). The relevant inquiry focuses on whether a reasonable official in the defendant's position would have believed his conduct was lawful given the state of law as it existed when the defendant took his challenged action. See Poe v. Haydon, 853 F.2d 418, 423-24 (6th Cir. 1988). In making this inquiry, a "court should be wary of simply substituting its view in hindsight for the police officers' opinion." Bills v. Aseltine, 52 F.3d 596, 603 (6th Cir. 1995). "'[I]f officers of reasonable competence could disagree on this issue, immunity should be recognized.'" Caigle v. Gilley, 957 F.2d 1347, 1348 (6th Cir. 1992) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).
 
 
 24
 In the present case, the plaintiffs contend that the defendants violated their Fourth Amendment rights by seizing the displayed jewelry. The plaintiffs do not contend that the defendants did not have probable cause to search the premises, and they do not challenge the warrant itself. Instead, they argue only that the officers exceeded the scope of the warrant. Therefore, it is unnecessary to delve into the "particularity" requirement of search warrants under the Fourth Amendment. However, even a valid search warrant can turn into a invalid general search if officers flagrantly disregard the limitations of the warrant. Such action violates the Fourth Amendment. See United States v. Lambert, 771 F.2d 83, 93 (6th Cir. 1985). The test is whether the officer's actions were reasonable. See id. In some cases, if stolen goods are intermingled with and indistinguishable from legitimately owned goods, the entire class of property may be seized temporarily for inspection and sorting. See United States v. Hillyard, 677 F.2d 1336, 1340 (9th Cir. 1982).
 
 
 25
 The district court held that the officers acted reasonably under the circumstances and therefore did not exceed the scope of the warrant. As observed by the court:
 
 
 26
 Here, the officers were searching for thousands of items of stolen jewelry, which was intermingled with legitimately owned jewelry. It was not possible for police to describe each item with particularity. Further, to require the police to check law enforcement records and run a LIEN check on every item during the execution of the search warrant would have taken days and thus would have greatly burdened Plaintiffs' privacy interests. It was more reasonable for the officers to act as they did here, to seize the goods for later sorting and verifying which items were stolen.
 
 
 27
 We agree with the district court's observation. The warrant authorized the seizure of all "stolen jewelry." Although the officers seized jewelry which was later found not to be stolen, it was within the realm of reasonableness for the officers to initially seize all of the jewelry and later verify which items were stolen. The officers' seizure of the displayed jewelry cannot be said to have flagrantly exceeded the limitations of the warrant. Officers of reasonable competence in the defendants' position could disagree as to whether seizure of the displayed jewelry was appropriate under the circumstances. Therefore, the defendants are entitled to qualified immunity.[1] We AFFIRM the judgment of the district court in Case No. 98-1760.
 
 II. CASE TWO: 98-1756
 
 28
 The plaintiffs here are Steven and Kellie Sue Brindley. They brought a § 1983 action alleging an illegal seizure of items in their home against the following defendants: City of Saginaw, the City of Saginaw Police Department, Saginaw Police Officer Michael McCullen, Saginaw County Sheriff Thomas McIntyre, Saginaw County Sheriff's Deputy Mark Garabelli, and Michigan State Police Officer Richard Mainprize.
 
 A. Factual Background
 
 29
 During the search of National Pawn and Ron's Avenue, the officers found that certain business records, such as daily cash reports and underlying receipts, corporate records, and employee records, were missing. The police suspected that the items would be found at the Brindley residence. Subsequently, a warrant was issued for the search of the Brindley home. The warrant incorporated by reference the affidavit and warrant for National Pawn and authorized the search and seizure of "[a]ll records and data for the years 1988 to the present, in whatever form and format kept . . . related to the establishment and or maintenance of a pawn business, secondhand business, and/or a precious metal and gem business or businesses and all such items relating to taxes, . . . pawn tickets, . . . correspondence to and or from any accountant and or tax preparer."
 
 
 30
 The search was conducted on February 8, 1994. The officers seized numerous items, including $ 5,000 in cash, pre-1988 receipts and photographs, airline tickets, the Brindleys' family tree, items related to the birth of their baby, family video tapes, personal photos and news clippings, and various other items. The Brindleys subsequently brought this action against the defendants, alleging that the defendants violated the Brindleys' Fourth Amendment rights by seizing items that were outside the scope of the warrant.
 
 B. Discussion
 1. Collateral Estoppel
 
 31
 For the same reasons stated in Case One, the plaintiffs were not collaterally estopped from attacking the seizures.
 
 2. Qualified Immunity
 
 32
 The district court held that the officers had probable cause to believe that the items they seized were within the scope of the warrant or were evidence of crimes they were investigating. Assuming the officers did seize items that were beyond the scope of the warrant, the court held that the officers were entitled to qualified immunity because their actions were "objectively reasonable." We disagree, and hold that the officers were not entitled to qualified immunity in this case.
 
 
 33
 The warrant authorized the search for certain records related to the plaintiffs' pawn and jewelry business, but the officers took several items that could not arguably be related to that description. Officer McCullen was the officer in charge of the seizure. Officers Garabelli and Mainprize brought numerous items to him and he, as the officer in charge, seized them. For example, Garabelli brought McCullen $5,000 in cash, a certificate of registration for a snowmobile and Mrs. Brindley's report card for the 1973-74 school year. Mainprize brought McCullen four airline tickets to Las Vegas and an embossed copy of Mrs. Brindley's family tree. The officers also seized numerous other items, including family photo albums and a video cassette of a 1985 family reunion. No reasonable officer in the defendants' position could have believed that certain seized items were within the scope of the warrant or evidence of a crime. Thus, the officers are not entitled to the protections of qualified immunity. We REVERSE the judgment of the district court in Case No. 98-1756.
 
 III. CASE THREE: 98-1771
 
 34
 The plaintiff in this case is Southfield Gold, a corporation. It is owned by Kellie Brindley, her father, Steve Serges, and Harvey Eisman. It brought this § 1983 action against several defendants, claiming that its Fourth Amendment rights were violated when the police seized certain pieces of jewelry during the investigation and prosecution of the criminal case. The only remaining appellees are officers Charles Brown, John Todd, and Troy Jolin.
 
 A. Factual Background
 
 35
 In June 1994, Officer Mainprize submitted an affidavit for a search warrant for Southfield Gold. The pertinent language of the warrant authorizing the search and seizure of items at Southfield Gold was nearly identical to that of the warrant authorizing the search of the Brindley residence, i.e., the warrant permitted the seizure of business records. However, during the search, the officers seized nearly 1,500 items of jewelry, precious metals, and gems valued at over $150,000.
 
 
 36
 After this search, Southfield Gold was indicted, but the charges were later dismissed. The plea agreement for the other defendants (now plaintiffs) stated that "no new claims shall be brought by any of the parties against each other involving this action." Of course, Southfield Gold was not a party to that agreement.
 
 
 37
 Southfield Gold brought this § 1983 action alleging that the defendants violated its Fourth Amendment rights because the defendants had a warrant only for documents, yet seized nearly 1,500 items of jewelry. The district court granted the defendants' motions for summary judgment. It held that the officers seized the jewelry because it was reasonably believed to be stolen, and it was in plain view during the search. It stated that the officers were lawfully in a position to view the jewelry and scrap gold because they entered Southfield Gold with a facially valid warrant. It also noted that there is no evidence that the discovery of the allegedly stolen jewelry was intentional. Finally,the court noted that the incriminating nature of the evidence was apparent from the totality of the circumstances.
 
 
 38
 The court held that even if the seizure violated Southfield Gold's Fourth Amendment rights, the officers were immune from liability, because they were performing discretionary functions, and their actions did not violate clearly established rights. Finally, it held that Southfield Gold had a full and fair opportunity to litigate the issue of its Fourth Amendment rights in the criminal suit, and, therefore, collateral estoppel bars the action.
 
 B. Discussion
 1. Collateral Estoppel
 
 39
 For the same reasons as stated in Case One, the district court erred in holding that collateral estoppel barred Southfield Gold's § 1983 action.
 
 2. Qualified Immunity
 
 40
 As in the previous case, the warrant authorized the search for certain business records, but the officers seized over 1500 items of jewelry, precious metal, and gems. Clearly, these items did not fall within the scope of the warrant. However, the defendants contend that these items were properly seized pursuant to the plain view exception to the warrant requirement. The plain view doctrine allows a warrantless seizure of items if: (1) the officer is lawfully on the premises; (2) the discovery is inadvertent; and (3) the incriminating nature of the items is immediately apparent. See United States v. Blankeney, 942 F.2d 1001, 1028 (6th Cir. 1991). In determining whether the incriminating nature of the seized item is immediately apparent, "[t]he standard does not demand an unduly high degree of certainty; rather, a plain view seizure is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." United States v. Calloway, 116 F.3d 1129, 1133 (6th Cir. 1997) (internal quotations omitted). We apply the following factors in determining whether the items' incriminating nature was immediately apparent: (1) the nexus between the seized object and the items particularized in the warrant; (2) the intrinsic nature or appearance of the seized object to associate it with criminal activity; and (3) if probable cause is the direct result of the executing officer's instantaneous sensory perceptions. See id.
 
 
 41
 The district court's conclusion that the seizure of the items was reasonable under the plain view exception was based in large part on Brown's affidavit, in which he described the circumstances surrounding the search of Southfield Gold and the seizure of the jewelry. Brown stated that there were several trays of jewelry with pawn tickets attached; this jewelry was not seized because its ownership could be traced using the pawn tickets and business records; there were other trays of jewelry without pawn tickets that did not appear to be new; he asked Harvey Eisman, the proprietor, about ownership of the jewelry, and Eisman stated that he did not know and could not produce any records to verify ownership of the jewelry; and, therefore, since there was no paperwork establishing the source of this jewelry, the jewelry was in and of itself a record related to the business.
 
 
 42
 However, Eisman submitted an affidavit contradicting Brown's version of the events. Eisman states that the officers seized his computer and then asked where he got the jewelry without tags to which he replied that "I don't know; but if you'll let me have my computer, I can find out." He also stated that the rings taken by the officers fell into three basic categories: new rings from wholesalers, used jewelry from other merchants, and rings cleaned and/or appraised for individuals or merchants. In addition he states that none of the rings taken by officers was purchased from individual members of the public and none of the rings was subject to reporting requirements. The district court made no mention of Eisman's affidavit in its ordergranting defendants' motions for summary judgment.
 
 
 43
 The district court erred in finding that the plain view exception permitted the seizure of the jewelry. Jewelry without pawn tickets "discovered" in a jewelry store can hardly be said to be immediately incriminating evidence nor does such discovery give rise to probable cause to associate the jewelry with criminal activity. Furthermore, no reasonable officer in the defendants' position could have believed that the jewelry was evidence of criminal activity. Thus, officers Brown, Todd, and Jolin were not entitled to qualified immunity. We therefore REVERSE the judgment of the district court in Case No. 98-1771.
 
 CONCLUSION
 
 44
 In light of the foregoing, we AFFIRM the district court's judgment in Case No. 98-1760, REVERSE the district court's judgments in Case Nos. 98-1756 and 98-1771, and REMAND the latter two cases for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 *
 The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.
 
 
 [1]
 The plaintiffs make no allegation in their brief concerning any illegal activities of Best, the assistant prosecutor in the criminal case. Prosecutors are absolutely immune from § 1983 liability for those activities that are "intimately associated" with the judicial phase of the criminal process; however, they are entitled to only qualified immunity when their actions are investigative in nature. See Burns v. Reed, 500 U.S. 478, 491-93 (1991). Whether Best is clothed with absolute or qualified immunity in this case makes no difference. Either way he is immune from § 1983 liability.