**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Benton SMITH, Defendant–Appellant.**

**No. 02–5945.**

United States Court of Appeals,
Sixth Circuit.

Aug. 20, 2003.

Gregg L. Sullivan, Asst. U.S. Attorney, Chattanooga, TN, for Plaintiff–Appellee.

Don W. Poole, Poole, Lawrence, Thornbury, Stanley & Morgan, Chattanooga, TN, for Defendant–Appellant.

Before BOGGS and SILER, Circuit Judges; and RICE, District Judge.*

* The Honorable Walter Herbert Rice, United States Chief District Judge for the Southern District of Ohio, sitting by designation.

## ORDER

Benton Smith appeals the sentence entered upon his guilty plea to attempting to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(b)(1)(C) & 846. The parties have expressly waived oral argument. Upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

Smith pleaded guilty pursuant to a negotiated plea agreement. The plea agreement provided that Smith would plead guilty to a charge of attempting to manufacture fifty grams or more of a mixture or substance containing methamphetamine.

The district court sentenced Smith at the lowest end of the applicable guideline range to seventy months of imprisonment and three years of supervised release.

In his timely appeal, Smith contends that: 1) the district court erred in overruling his motion for a downward departure; and 2) the district court erred by including in the determination of drug quantity the amount of pseudoephedrine seized during the search of his motel room. The parties have filed briefs and expressly waived oral argument.

▪ Initially, we conclude that the district court's refusal to depart downward is not reviewable. This court has consistently held that the decision by a district court not to depart downward from the guidelines is not reviewable on appeal unless the record reflects that the district court was not aware of or did not understand its discretion to make such a departure. *United States v. Bearden*, 274 F.3d 1031, 1038 (6th Cir.2001). In the absence of ambiguous statements by the district court concerning its discretion, there is a presumption that the court was aware of the

law it was called upon to apply, *United States v. Russell,* 870 F.2d 18, 20 (1st Cir.1989), and it should be assumed that the court, in the exercise of its discretion, found the downward departure unwarranted. *United States v. Byrd,* 53 F.3d 144, 145 (6th Cir.1995).

Smith moved for a downward departure based on his efforts toward rehabilitation from drug dependence. The district court considered the motion and denied it. The district court explained:

> I'm encouraged about what I have see here, about your efforts to deal with the problem. But I would have to say that with respect to the motion to depart downward that I cannot say in good faith that this case is outside of the heartland of the guidelines. In fact, it's well within, well within the heartland.... And I think that it's because of that I will put your sentence at the low end of the guideline range, but I don't think that it's worthy of a downward departure from the guidelines.

Because the district court did not reject Smith's motion for departure based on a mistaken belief that it lacked the authority to do so, the district court's refusal to depart downward is not reviewable. *Bearden,* 274 F.3d at 1038

The district court properly determined the quantity of drugs attributable to Smith. This court reviews a district court's application of the Sentencing Guidelines *de novo,* and the district court's findings of fact thereunder for clear error. *United States v. Jarman,* 144 F.3d 912, 914 (6th Cir.1998). Smith contends that the district court erred by taking into account the amount of pseudoephedrine seized from his motel room in the court's determination of his base offense level. Smith appears to base his contention on two grounds. First, because Smith succeeded in suppressing the 218 grams (2,644 tablets) of pseudoephedrine seized

from his motel room, it could not have been admitted against him as evidence at trial and should not be used in determining sentence. Second, Smith argues that the district court had insufficient reliable evidence upon which to convert the 2,644 motel room tablets to 218 grams of pseudoephedrine (that was, in turn, converted to an attributable amount of methamphetamine).

To the extent Smith contends that the district court erred by taking into account the amount of pseudoephedrine seized from his motel room, he is mistaken. Smith acknowledges this court's decision in *United States v. Jenkins,* 4 F.3d 1338, 1344–45 (6th Cir.1993), wherein the court permitted the use of illegally seized evidence for sentencing purposes after finding no indication that the evidence was obtained to enhance the defendant's sentence.

■ The rationale of *Jenkins* supports the district court's consideration of the 218 grams of pseudoephedrine in determining Smith's base offense level. The district court was not required to exclude the pseudoephedrine on the ground that it was obtained during a search later found to be unconstitutional. *See id.* There is no indication in the record that the pseudoephedrine was obtained to enhance Smith's sentence, and Smith asserts no such argument. The district court noted that while the search "might have been constitutionally deficient" due to the inadequacy of the affidavit supporting the search warrant, the search "was an appropriate search."

■ The district court did not clearly err in determining the amount of pseudoephedrine attributable to Smith. Smith argues that the district court had insufficient reliable evidence upon which to convert the 2,644 motel room tablets to 218 grams of pseudoephedrine (that was, in

turn, converted to an attributable amount of methamphetamine). The record belies Smith's contention. At sentencing, a special agent for the Drug Enforcement Agency testified that in terms of converting the number of tablets into pseudoephedrine, he multiplied the number of tablets times the milligram amount contained in each tablet. The special agent testified that his calculation resulted in "approximately 218 point something grams." Based on the foregoing uncontroverted testimony, the district court did not clearly err in determining the amount of pseudoephedrine attributable to Smith.

Accordingly, we hereby affirm the district court's judgment.