**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0389n.06

No. 09-5819

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Jun 07, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee. | ) | |
| | ) | On Appeal from the United |
| v. | ) | States District Court for the |
| | ) | Eastern District of Kentucky |
| JOSEPH MATHIAS CARMACK, | ) | |
| | ) | |
| Defendant-Appellant, | ) | |
| _____ | ) | |

Before: GIBBONS and WHITE, Circuit Judges; MALONEY, District Judge.[*]

**PAUL L. MALONEY, Chief District Judge.** Defendant-Appellant Joseph Carmack ("Carmack") was charged in a four-count indictment, that included a forfeiture count. He filed a motion to suppress evidence seized during the execution of a search warrant at his residence. The district court granted the motion in part, suppressing evidence of credit cards, and denied the motion in part, allowing evidence of a sawed-off shotgun. Carmack entered a conditional guilty plea to possessing a counterfeit money order, 18 U.S.C. § 500, and an unregistered short-barrel shotgun, 26 U.S.C. § 5861(d). Carmack was sentenced to a term of imprisonment of 18 months, with supervised release to follow.

Carmack raises two issues in this appeal. First, Carmack argues the district court erred by failing to exclude the sawed-off shotgun from evidence. Second, Carmack argues the district court

_____

[*]The Honorable Paul L. Maloney, Chief United States District Judge for the Western District of Michigan, sitting by designation.

erred when it enhanced his sentence by considering the suppressed credit card evidence as relevant conduct.

## I

With one exception, which will be explained below, the parties agree on the facts. On May 23, 2005, Carmack mailed a counterfeit postal money order in the amount of $435.98 to a company in Louisiana that sells law enforcement items. The check triggered an investigation, during which law enforcement sought a search warrant for Carmack's residence. The warrant issued and authorized law enforcement agents to seize various described items, including counterfeit postal money orders, postal money order receipts, law enforcement apparel, a personal computer, and a color scanner/copier. While executing the warrant and searching the residence, officers seized several items not included in the items listed in the search warrant. The officers discovered and seized more than 25 credit cards issued to Carmack and members of his family. The officers also seized a sawed-off shotgun they observed in the back seat of a vehicle located in proximity to the residence.

The parties dispute the location of the vehicle in which the sawed-off shotgun was found. Carmack filed a motion to suppress and a hearing was conducted before a magistrate judge. The law enforcement officers who executed the search testified the vehicle was located approximately 20 to 25 feet from the door of the residence. The officers also testified they had to walk by the vehicle when traveling from their cars to the door of the residence. In contrast, Carmack's wife testified the vehicle was positioned more than 140 feet from the residence when the search occurred. She stated the vehicle was not next to the residence or the porch, but was instead down the hill from the residence next to a utility pole. She testified that the vehicle had not been operating for more than one year and had been moved to a spot away from the residence for insurance purposes. Carmack's

cousin also testified the vehicle was located by the utility pole because the vehicle was disabled and, for insurance purposes, it had to be parked away from the residence. The cousin testified he helped push the vehicle to the location by the utility pole in either late winter or early spring of 2004.

The magistrate judge issued a report recommending that evidence of the sawed-off shotgun not be suppressed for two reasons.[1] First, the warrant covered the automobile in which the shotgun was discovered. The magistrate judge reasoned that the use of the word "residence" in the search warrant was interchangeable with the word "premises," and the authority to search extended to vehicles within the curtilage of the described building. Rather than resolving the factual dispute as to where the car was located, the magistrate judge concluded the vehicle would be within the curtilage of the residence if it were either 25 or 140 feet from the building. Second, in the alternative, the Magistrate Judge found that the plain view doctrine justified the decision to seize the shotgun. Regarding the location of the vehicle, under the alternative theory, the magistrate judge found credible the testimony of the two law enforcement officers and discounted the credibility of Carmack's witnesses. As a result, the officers were legally present where the sawed-off shotgun was plainly seen.

The district court overruled Carmack's objections and denied Carmack's motion to suppress as to the evidence of the shotgun. *United States v. Carmack*, No. 6:08-cr-50 (E.D. Ky. Jan. 13, 2009) (order). The district court concluded the plain-view doctrine applied to the seizure of the shotgun. Addressing the credibility of the witnesses, the district court afforded deference to the magistrate judge's observations and found the magistrate judge's determinations were supported by sufficient evidence. The district court thus adopted the magistrate judge's factual finding that the vehicle was

---

[1]The magistrate judge recommended the evidence related to the credit cards be suppressed. The Government did not object to that recommendation.

parked between 20 and 25 feet from the residence and, therefore, the officer who observed the sawed-off shotgun was legally present at the location from which he observed the sawed-off shot gun. The district court found Detective Easter had probable cause to associate the shotgun with criminal activity based on the observable length of the weapon.

## II

A district court's factual determinations on a motion to suppress are reviewed for clear error and the court's legal determinations are reviewed *de novo*. *United States v. Martin*, 526 F.3d 926, 936 (6th Cir. 2008) (citing *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)). A district court's determination of probable cause is reviewed *de novo*. *Id.* (citing *United States v. Padro*, 52 F.3d 120, 122 (6th Cir. 1995)). The evidence, however, must be viewed in the light most likely to support the district court's decision. *Id.* (citing *Frazier,* 423 F.3d 526, 531). "A denial of a motion to suppress will be affirmed on appeal if the district court's conclusion can be justified for any reason." *United States v. Higgins*, 557 F.3d 381, 389 (6th Cir. 2009) (quotation marks, citations, and alterations omitted).

A finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (citation omitted). The Supreme Court summarized the nature of such review.

> This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. . . . "In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues *de novo*." If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible

views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Id.* at 573-74 (internal citation and citations omitted). Findings of fact based on determinations of credibility are entitled to even greater deference "for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Id.* at 575; *see Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002) (deferring to credibility determinations made by a magistrate judge) (citing *Peveler v. United States*, 269 F.3d 693, 702 (6th Cir. 2001)). However, a district court's factual findings, even if supported by credibility determinations, may be found clearly erroneous when objective evidence contradicts a witness's story or the story itself is so inconsistent or implausible that no reasonable factfinder would find it credible. *Anderson*, 470 U.S. at 575.

## III

### A. ADMISSIBILITY OF THE SAWED-OFF SHOTGUN

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *See Horton v. California*, 496 U.S. 128, 133 (1990). "A search compromises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property." *Id.* (citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment - subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). Accordingly, law enforcement officers are generally required to secure a valid search warrant prior to executing a search or a seizure.

The Fourth Amendment requires the place to be searched and the items to be seized to be described with particularity in the warrant. *Groh v. Ramirez*, 540 U.S. 551, 557 (2004); *see United States v. Wright*, 343 F.3d 849, 863 (6th Cir. 2003) (describing the particularity requirement for items to be seized); *United States v. Pelayo-Landero*, 285 F.3d 491, 495-96 (6th Cir. 2002) (describing the particularity requirement for the place to be searched).

> The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.

*Maryland v. Garrison*, 480 U.S. 79, 84 (1987). A search authorized by a valid search warrant may become an invalid general search if the executing officers flagrantly disregard the limitations of the search warrant. *United States v. Garcia*, 496 F.3d 495, 507 (6th Cir. 2007) (citation omitted). "For purposes of general search analysis, we will find that an officer flagrantly disregards the limitations of a warrant only where he 'exceed[s] the scope of the warrant *in the places searched*' (rather than the items seized)." *Id.* (citing *Waller v. Georgia*, 467 U.S. 39, 43 n.3 (1984) and *United States v. Decker*, 956 F.2d 773, 779 (8th Cir. 1992)). "The test for determining if the officers engaged in an impermissible general search is whether their search *unreasonably* exceeded the scope of the warrant." *Garcia*, 496 F.3d at 507 (emphasis in original) (citing *Brindley v. Best*, 192 F.3d 525, 531 (6th Cir. 1999)).

Courts have recognized the plain-view doctrine as an exception to the warrant requirement. *See Garcia*, 496 F.3d at 508 (citing *Horton*, 496 U.S. at 134). When an item is in plain view, "neither its observation nor its seizure would involve any invasion of privacy," and therefore the plain view exception to the warrant requirement implicates the protection from unreasonable seizures, rather than unreasonable searches. *Horton*, 496 U.S. at 133-34 (citations omitted). The

plain view exception permits warrantless seizures when four conditions are satisfied: (1) the object is in plain view; (2) the officer is legally present in the place from which the object can be plainly seen; (3) the object's incriminating nature is immediately apparent; and (4) the officer has a lawful right of access to the object. *Garcia*, 496 F.3d at 508 (citing *Horton*, 496 U.S. at 136-37 and *United States v. McLevain*, 310 F.3d 434, 438-39 (6th Cir. 2002)).

The seizure of the shotgun falls under the plain-view exception to the warrant requirement. Each of the four conditions of the plain view exception is present. Carmack does not dispute that the sawed-off shotgun was in plain view. Turning to the second condition, the district court concluded the officers were lawfully present in the place where the weapon was in plain view. The district court resolved the disputed location of the vehicle in favor the Government. The district court believed the testimony of the officers, rather than the testimony of Carmack's witnesses, regarding the location of the vehicle where the weapon was found. Carmack identifies no objective evidence in the record that contradicts the officers' testimony. Under the appropriate standard of review, this court must accept the district court's factual conclusion that the vehicle was 20 to 25 feet from the mobile home at the time of the search unless that conclusion was clearly erroneous. The officers testified that they had to walk past the vehicle while walking between their cars and Carmack's residence. Based on these facts, the district court held, and we agree, that officers were legally present in the place the shotgun was observed.

Under the "immediately apparent" portion of the analysis, the third condition, multiple factors may be taken into account, none of which are necessary, but each of which are instructive. *Garcia*, 496 F.3d at 510. Under this third condition, courts should consider (1) the nexus between the seized object and the items particularized in the warrant, (2) whether the intrinsic nature or appearance of the object gives probable cause to believe it is associated with criminal activity, (3)

whether the officers, at the time of the discovery of the object and with the facts then available, can determine probable cause of the object's incriminating nature, and (4) whether the officer can recognize the incriminating nature of the object as the result of his instantaneous sensory perception. *Id.*; *see McLevain*, 310 F.3d at 441-43; *United States v. Beal*, 810 F.2d 574, 576-77 (6th Cir. 1987). All but the first factor favor finding that the third condition is present, that is, the incriminating nature of the weapon was immediately apparent.

This court reviews the determination of probable cause *de novo*. *Higgins*, 557 F.3d at 389. At same time, this court reviews the factual basis for reaching the determination of probable cause in the light that most likely supports the district court's decision. Probable cause does not require knowledge that the evidence is contraband. *McLevain*, 310 F.3d at 441. Rather, probable cause "merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983) (internal citation and citation omitted).

Based on his view of the partially covered weapon, Detective Easter had probable cause to believe the weapon was short enough to be illegal, in the absence of registration. Detective Easter observed the weapon on the backseat of the vehicle and that it was partially covered with some sort of material. He testified that the weapon was extremely short compared to a normal shotgun. Detective Easter explained that he removed the shotgun from the vehicle because he knew that it was much shorter than the length of a normal shotgun. He further testified that as a result of his experience as a law enforcement officer, he was familiar with shotguns and had knowledge of how long a shotgun would ordinarily be. The district court concluded, based on this testimony, that the officer had probable cause to believe the weapon was contraband. Taking these facts in the light that

most likely supports the district court's conclusion that probable cause existed, we can find no error in the district court's determination.

The court has held that the incriminating nature of a saw-off shotgun is "immediately apparent." *United States v. Truitt*, 521 F.2d 1174 (6th Cir. 1975); *see also United States v. Wade*, 30 F. App'x 368, 369 (6th Cir. 2002) (unpublished opinion); *United States v. Johnson*, 178 F.3d 1297 (6th Cir. Feb. 9, 1999) (per curiam) (unpublished table opinion). Each of these cases involved a sawed-off shotgun and, in each case, this court held that the incriminating nature of the weapon was immediately apparent. *Truitt*, 521 F.2d at 1177 ("'But a sawed off shot-gun in private hands is not an intrinsically innocent object. The possession of it is a serious crime, except under extraordinary circumstances.'" quoting *Porter v. United States*, 335 F.2d 602, 607 (9th Cir. 1964)). *Wade*, 30 F. App'x at 372 ("Clearly, for purposes of the plain view doctrine, the immediately apparent intrinsically incriminating nature of a sawed-off shotgun is the length of the barrel. That characteristic alone provides probable cause for a police officer to believe that the weapon is illegally possessed."); *Johnson*, 1999 WL 107978, at * 2 ("The incriminating nature of a sawed-off shotgun is immediately apparent, thus, so long as the task force officers were lawfully standing in a place from which the sawed-off shotgun was plainly visible, its seizure was lawful."). *Cf. United States v. Poulos*, 895 F.2d 1113, 1122 (6th Cir. 1990) (holding the criminality of silencer component parts was immediately apparent because silencers, like sawed-off shotguns, are not intrinsically innocent objects), *abbrogated on other grounds by Horton*, 496 U.S. 128.

The fourth condition also merits application of the plain view exception. This condition tests whether the officers had lawful access to the contraband or whether the officers had to commit a trespass in order to seize the contraband. The officers had lawful access to the weapon because they were executing a valid search warrant on the property where the weapon was observed. *See Brown*,

460 U.S. at 738-39, n.4; *United States v. Atchley*, 474 F.3d 840, 850 (6th Cir. 2007). Because

Detective Easter was lawfully present when he observed a weapon, and because he had a reasonable

belief that the weapon was contraband, the officer lawfully opened the door to the vehicle to access

the shotgun without violating the Fourth Amendment.

## B. USE OF SUPPRESSED EVIDENCE TO ENHANCE SENTENCE

Carmack concedes that this court in *United States v. Jenkins*, 4 F.3d 1338 (6th Cir. 1993),

held that a district court may consider improperly seized evidence, though inadmissible at trial, to

enhance a defendant's sentence, so long as the evidence was not seized for the purpose of enhancing

the defendant's sentence. *Jenkins*, 4 F.3d at 1344-45; *see United States v. Smith*, 73 F. App'x 819,

821 (6th Cir. 2003) (unpublished opinion) (same and citing *Jenkins*). "A decision of one panel of

this court binds all other panels. Consequently, no panel may overrule a published opinion of a

previous panel." *Jenkins*, 4 F.3d at 1345, n.8 (citations omitted).


## CONCLUSION

For the reasons set out above, we **AFFIRM** the judgment of the district court.