NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0429n.06

No. 21-6102

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Oct 24, 2022<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| RODOLFO TORRES, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |
| | ) | |

Before: GUY, WHITE, and LARSEN, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Defendant-Appellant Rodolfo Torres appeals the partial denial of his motion to suppress. Because the police misconduct here does not constitute flagrant disregard for the limitations of the warrant, we AFFIRM.

**I.**

On March 5, 2019, Knox County Sheriff's Lieutenant Chris Bryant swore out an affidavit before a Knox County criminal-court judge in support of an application for a search warrant. Bryant alleged probable cause and reasonable grounds for believing that evidence of violations of two Tennessee drug offenses committed by Torres and his wife would be found at their residence at 8537 Old Rutledge Pike, Knoxville, Knox County, Tennessee (8537 Old Rutledge Pike). The request for the search warrant arose out of three sales of marijuana to a confidential informant. The warrant authorized a search for the following evidence:

> All controlled substances, controlled substances paraphernalia, scales and mixing devices, packaging materials, and equipment, devices, records, computers and

computer discs, books or documents adapted and used for the purpose of producing, packaging, dispensing, delivering or obtaining controlled substances, or recording transactions involving controlled substances, indicia of ownership, dominion, or control over premises . . . photographs of any persons involved in criminal conduct, all financial records pertaining to the distribution of the proceeds of the violation of the criminal laws specified above . . . any evidence or items which would be used to conceal the foregoing or prevent its discovery, any weapons, and any cellular telephones or vehicles found to be associated with [Torres and his wife] at 8537 Old Rutledge Pike, Knoxville, Knox County, Tennessee.

R.17-1, PID 47. The warrant permitted officers "to search [Torres and his wife] and the premises of [Torres and his wife] located in a single family type residence and out buildings with an address of 8537 Old Rutledge Pike." *Id*. at 54. Two exhibits were attached to the warrant. Exhibit A included "pictures of the residence at 8537 Old Rutledge Pike" and Exhibit B included "maps of the area with the location of 8537 Old Rutledge Pike . . . highlighted in red." *Id*. at 55. The search warrant was issued and executed on the same day.

All parties agree that, by the terms of the search warrant, the officers' search was to be confined to the residence, garage and outbuildings at 8537 Old Rutledge Pike. When they executed the warrant, however, the officers also searched a trailer located at 8533 Old Rutledge Pike. Although the trailer shared a gravel driveway or path with the residence at 8537 Old Rutledge Pike, it was located just over the boundary line separating the properties. The trailer is visible in the plat map attached as Exhibit B to the search warrant and appears just outside the red boundary line of 8537 Old Rutledge Pike.

Officers seized 12 firearms, a ballistic vest, ammunition, magazines for firearms, scopes, and over $25,000 in cash from the residence, and a rifle, marijuana paraphernalia, and marijuana from the garage. After searching the residence, garage, a vehicle on the property and a shed, agents checked the perimeter of the house and the property to see if there was anything they might have missed. As the officers completed their search of the perimeter, they noticed a travel trailer about

100 to 200 yards from the garage. Looking through the window of the travel trailer, officers identified marijuana residue and a knife that had marijuana residue on it. Bryant gave instructions to the other officers to break the padlock securing the trailer with a pry bar. Inside the trailer, officers found about 35 pounds of packaged marijuana. Bryant later conceded that he did not look at the property map before opening the trailer and that, based on the exhibit attached to the warrant, the officers should have known that they were not authorized to search the trailer.

Following the search, Torres was charged in state court with possession of a firearm during the commission of a dangerous felony. And on August 6, 2019, Torres was federally indicted on one count of being an illegal alien in possession of a firearm, 18 U.S.C. § 922(g)(5). In the federal indictment, the government relied on the 13 firearms that were retrieved from Torres's home and garage during the search. Torres was not indicted on any federal drug charges.

The Knox County General Sessions Court held a preliminary hearing on the state charges on August 7, 2019, and during that hearing Bryant admitted that the scope of the warrant did not include the trailer, and that the warrant included maps of the boundary lines of the property to be searched. The state court dismissed all charges.

On November 14, 2019, Torres filed a motion to suppress in the federal case, arguing that the officers had exceeded the scope of the warrant, and "[t]he remedy for a search of places not covered by the warrant is 'the suppression of *all* evidence seized during the search.'" R.17, PID 42, (quoting *United States v. Garcia*, 496 F.3d 495, 507 (6th Cir. 2007)). A magistrate judge filed a Report and Recommendation (R&R) concluding that the search of the trailer exceeded the scope of the warrant, but because "the officers did not unreasonably exceed the scope of the search warrant in searching the trailer . . . the search of the trailer does not convert the entire search on March 5, 2019 into a general search," and "only that evidence seized from the trailer is subject to

the exclusionary rule." R.43, PID 321. Torres objected to the R&R, but the district court rejected his objections.

The district court adopted the R&R's conclusion that the search of the trailer exceeded the scope of the warrant and ordered that evidence seized from the trailer be suppressed. The district court rejected Torres's argument that the proper remedy was blanket suppression of all evidence obtained from all locations searched. The court found that although the officers had access to a map, which "would have indicated that the trailer was not on defendant's property," the circumstances that the warrant "specifically included outbuildings to the property;" that "the trailer was at the end of a gravel driveway shared by the property listed in the search warrant and an adjacent property;" and "the only pathway to the trailer was via the driveway on defendant's property," supported the conclusion that the officers' search beyond the scope of a warrant was not unreasonable. R.55, PID 440-41. As a result, the district court suppressed the evidence seized from the trailer but denied Torres's motion to suppress with respect to a blanket suppression.

Following the partial denial of his motion to suppress, Torres entered into a conditional plea agreement under which he retained "the right to appeal the Memorandum and Order . . . granting in part and denying in part the Motion to Suppress." R.65, PID 462. Torres was sentenced to 37 months in prison and now appeals.[1]

---

[1] Torres also filed two motions to dismiss, which argued that collateral estoppel and issue preclusion arising from the state court's dismissal of all state charges required dismissal. The district court denied those motions and found that neither collateral estoppel nor issue preclusion applied. Torres does not appeal from those denials.

**II.**

Torres raises only one issue on appeal: whether the appropriate remedy for the unauthorized search of the trailer is blanket suppression of evidence seized from all locations searched, or only the evidence seized from the trailer.

When reviewing a district court's decision on a motion to suppress, we review "the district court's factual findings for clear error, and its legal conclusions de novo." *United States v. Adams*, 583 F.3d 457, 463 (6th Cir. 2009). Where the district court has denied the motion to suppress, we review the evidence "in the light most likely to support the district court's decision." *Id.* (quoting *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999)).

Torres argues that the district court erred in weighing the reasonableness of the officers' search of the trailer because when officers "exceed the scope of the warrant *in the places searched*, the police commit an unlawful general search for which the remedy is blanket suppression of all of the evidence." Appellant Br. at 17. In essence, Torres argues that the search of the trailer was inherently unreasonable because the warrant did not include the trailer as a location to be searched.

Torres cites to no authority for such a rule, and instead argues that this conclusion follows from our decision in *United States v. Garcia*, 496 F.3d 495 (6th Cir. 2007). We disagree. Garcia argued that officers had engaged in an impermissible general search, and that "the broad remedy for such a sweeping Fourth Amendment violation is 'the suppression of all evidence seized during the search.'" *Id.* at 507 (quoting *United States v. Lambert*, 771 F.2d 83, 93 (6th Cir. 1985)). However, this is where the similarity ends. "The search warrant for Garcia's residence authorized the officers to peruse every area of the house—including 'all garages, outhouses, edifices, structures, openings, and enclosures, thereto'—in search of an item that can be hidden in small and discrete places (i.e., cocaine)." *Id.* Garcia did "not argue that the officers searched places not

authorized in the warrant" and instead challenged the officers' seizure "of more than one hundred documents." *Id*. In finding that Garcia had not established an impermissible general search, we noted that "we will find that an officer flagrantly disregards the limitations of a warrant only where he 'exceed[s] the scope of the warrant *in the places searched*' (rather than the items seized)." *Id*. (quoting *Waller v. Georgia*, 467 U.S. 39, 44, n.3 (1984)). We also noted that "[t]he test for determining if the officers engaged in an impermissible general search is whether their search *unreasonably* exceeded the scope of the warrant." *Id*.

Torres seizes on the language in *Garcia* that "an officer flagrantly disregards the limitations of a warrant only where he 'exceed[s] the scope of the warrant in the places searched'" to argue that the search of the trailer converted the search as a whole into an impermissible general search. *Id*. (quoting *Waller*, 467 U.S. at 44, n.3). But as the government responds, this "mistakes a necessary condition for a sufficient one." Appellee Br. at 15. Although, in *Garcia*, we suggested that a general search occurs only when an officer "exceed[s] the scope of the warrant in the places searched," we made clear that the underlying "test for determining if the officers engaged in an impermissible general search is whether their search *unreasonably* exceeded the scope of the warrant." *Garcia*, 496 F.3d at 507 (citing *Brindley v. Best*, 192 F.3d 525, 531 (6th Cir. 1999)). We explained that "[a] search pursuant to a valid warrant may devolve into an invalid general search if the officers 'flagrant[ly] disregard . . . the limitations of the search warrant." *Id*. (quoting *Lambert*, 771 F.2d at 93). Accordingly, blanket suppression could be warranted only where "an officer flagrantly disregards the limitations of a warrant" by "'exceed[ing] the scope of the warrant *in the places searched*.'" *Id*. (quoting *Waller*, 467 U.S. at 44, n.3). We concluded in *Garcia* that because "the officers' search of Garcia's residence did not exceed the scope of the warrant—much less unreasonably so"—it did not amount to an impermissible general search, and blanket

suppression was unwarranted. *Id.* at 508. Although an officer "exceed[s] the scope of the warrant" by searching places beyond the warrant's terms, blanket suppression is warranted only where the officer flagrantly and unreasonably exceeds the scope of the warrant.

The district court here found that the officers did not unreasonably exceed the scope of the warrant based on three factual findings. First, "the search warrant specifically included outbuildings on the property." R.55, PID 440. Second, "the trailer was at the end of a gravel driveway shared by the property listed in the search warrant and an adjacent property." *Id.* And third, "the only pathway to the trailer was via the driveway on defendant's property." *Id.* The district court also addressed Torres's argument that "the warrant here 'clearly said, *don't search that travel trailer*'" because the map appended to the search warrant showed that the trailer was over the property line. *Id.* The court noted that, although the "officers should have consulted the map before searching the trailer . . . a map's indication of property lines is not as blatant a statement to not search the trailer as defendant would have the Court believe." *Id.* at 441. Additional facts in the record suggest that the officers' search was more likely the result of negligence, rather than flagrant disregard for the limitations of the warrant. The magistrate judge noted that "the location of the trailer suggested that it was linked to the Defendant's property," and Bryant "did not review the [map] at the time he told the officers to search the trailer, and that he did not realize the trailer was on the neighboring property" until after the proceedings in state court began. R. 43, PID 319, 321. Further, in his briefing before the district court, Torres acknowledged that the trailer "was connected to the main house by a power cord." R.44, PID 361.

Nor are we persuaded by Torres's reliance on *United States v. King*, 227 F.3d 732 (6th Cir. 2000). Although the facts in *King* are somewhat analogous, the case did not involve blanket suppression. In *King*, the FBI obtained a search warrant for the "downstairs unit in a two-family,

two and one half story" home. *Id*. at 737. The downstairs unit was a "five-room apartment consisting of a front room, two bedrooms, a kitchen, and a bathroom." *Id*. When the FBI executed the warrant, they found "a door in the kitchen that [led] to a common hallway. The hallway contain[ed] a door that [led] into the building's basement. A person cannot directly access the basement from the downstairs unit." *Id*. at 737-38. The officers recovered 60.6 grams of cocaine base in one bedroom and 16.65 grams in another bedroom. The agents "then exited the downstairs unit and searched the building's basement where [they] discovered 443 grams of cocaine base." *Id*. at 738. King moved to suppress evidence of the 443 grams of cocaine base discovered in the basement; the district court denied the motion and we reversed. *Id*. at 754.

We concluded that the FBI's search of the downstairs unit became an impermissible "general search" because the FBI flagrantly disregarded the limitations of the warrant, and "the officer's actions were not reasonable inasmuch as the area was not 'common' area for purposes of being included within the parameters of the search of Defendant's unit and the nature of the location of the basement in this two-unit dwelling should have put the agents on notice that the search warrant did not include this area." *Id*. at 751 (citations omitted). We also noted that the "agent who searched the basement acknowledged that the search warrant did not specifically mention the basement" and that "the warrant did not authorize a search of the upstairs unit since it was a separate living unit." *Id*. at 753. The agent's search was not reasonable under the circumstances because "the basement of the duplex was not accessible to the general public—i.e., the basement could not be reached from the outside because the door was locked and could only be entered if one of the tenants had admitted the guest into the duplex . . . the agent's search of the basement in this type of situation is no different than if the agent had attempted to search the [upstairs] unit without a warrant." *Id*. at 754.

The facts here are distinguishable. Unlike the shared hallway in *King*, which the court stated should have put the agent on notice that the basement was a separate unit, the government highlights that there were no physical markings on the property to alert the officers that they had crossed from 8537 Old Rutledge Pike to a separate property at 8533. *See* R.94, PID 674 ("Were the property lines marked in any matter between 8533 and 8537" "No, sir, they're not."). The officers' failure to properly examine the warrant is more analogously viewed as an "error[] in judgment" rather than a "purposeful or flagrant violation of [Torres's] Fourth Amendment rights." *Utah v. Strieff*, 579 U.S. 232, 241 (2016) (noting in the search incident to arrest context that "two good-faith mistakes" "hardly rise to a purposeful or flagrant violation" of Fourth Amendment rights). As the district court noted, the physical characteristics of the property and the warrant's explicit authorization to search "outbuildings" distinguish this case from *King*. Reviewing the evidence "in the light most likely to support the district court's decision," *Adams*, 583 F.3d at 463 (quoting *Navarro-Camacho*, 186 F.3d at 705), it is difficult to conclude that the officers "flagrantly disregard[ed]" the limitations of the warrant, *Garcia*, 496 F.3d at 507. More importantly, in *King* the remedy was suppression of the fruits of the unwarranted search of the basement, not blanket suppression.[2]

The remedy of a blanket suppression has typically been reserved for "exceptionally egregious circumstances" and the facts here do not meet that high bar. *United States v. Webster*, 809 F.3d 1158, 1166 (10th Cir. 2016) (collecting cases). As the government notes, the Sixth

---

[2] The government makes a separate argument based on *Herring v. United States*, 555 U.S. 135, 137 (2009). *See* Appellee Br. at 11 (arguing that "[s]uppression is an 'extreme sanction'" and that "the district court appropriately weighed the benefits and harms of suppression" and "struck a fair balance when it suppressed the marijuana but not Torres's firearms."). The district court declined to address *Herring* because it found that the officers did not unreasonably exceed the scope of the warrant. We follow the same course.

Circuit has never authorized the remedy of blanket suppression. Indeed, even in *King*, where we found that a general search had occurred, the remedy was to suppress only the evidence found in the basement—the cocaine base seized from the downstairs unit was not suppressed. *King*, 227 F.3d at 753; *but see* Appellant Reply at 9 (admitting that blanket suppression was not the remedy in *King* but arguing that neither party requested blanket suppression); *see also United States v. Shamaeizadeh*, 80 F.3d 1131, 1139 (6th Cir. 1996) (finding that officers should have been "on notice that the basement apartment was a separate residence not covered under the warrant," and only suppressing evidence seized from the basement apartment). Further, the officers' failure to consult the map appended to the warrant—considering the circumstances that led to the officers' conclusion that the trailer was part of the covered property—is distinguishable from the limited circumstances in which other circuits have found blanket suppression to be an appropriate remedy. *See, e.g., United States v. Medlin*, 842 F.2d 1194, 1199 (10th Cir. 1988) (affirming the district court's blanket suppression of evidence where ATF agents seized 667 items not identified in the warrant, and where the district court determined that the agents "employed the execution of the federal search warrant as a 'fishing expedition.'"); *United States v. Foster*, 100 F.3d 846, 850, (10th Cir. 1996) (affirming the district court's blanket suppression of evidence where the search amounted to "a wholesale seizure of Foster's property amounting to a fishing expedition for the discovery of incriminating evidence" and where the district court "stated that it could not 'imagine a more pronounced case of a search warrant execution conducted in flagrant disregard for its terms.'"); *United States v. Rettig*, 589 F.2d 418, 423 (9th Cir. 1978) (ordering suppression of all evidence where "agents did not confine their search in good faith to the objects of the warrant, and that while purporting to execute it, they substantially exceeded any reasonable interpretation of its provisions . . . [it] became an instrument for conducting a general search [and u]nder the

circumstances, it is not possible for the court to identify after the fact the discrete items of evidence which would have been discovered had the agents kept their search within the bounds permitted by the warrant.").

Accordingly, we conclude that the district court did not err in suppressing only the evidence seized from the trailer and denying Torres's motion to suppress all evidence recovered from the search and AFFIRM.