NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0742n.06

No. 09-6467

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

**Nov 01, 2011**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| MARVIN HARRIS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: BOGGS and SILER, Circuit Judges, and VAN TATENHOVE, District Judge.[*]

**VAN TATENHOVE, District Judge**. After a three-day trial, a jury found Defendant-Appellant Marvin Harris guilty of two counts of distributing crack cocaine, and one count each of being a felon in possession of a firearm, maintaining a place of residence for the purpose of distributing crack cocaine, and possessing a firearm in furtherance of a drug trafficking crime. The district court sentenced Harris to a total of 260 months, 200 months on the first four charges, to be served concurrently, and sixty months on the last, to be served consecutively.

On appeal, Harris argues that his case should be remanded for a new trial because the evidence offered against him was insufficient to support the jury's guilty verdict. He further claims that his sentence is unreasonable because the district court failed to consider his arguments that his

---

[*]The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

age and medical conditions warranted a downward departure or variance from the calculated

Sentencing Guidelines range. For the reasons set forth below, we **AFFIRM** Harris's conviction and

sentence.

## I.

Harris went to trial on the charges contained in a Second Superseding Indictment.[1] During

the trial, witness Juston Richards testified that he served as the Confidential Informant ("CI") who

bought crack cocaine from Harris on April 7 and 9, 2008. Richards admitted that he agreed to

cooperate with the government in hopes of receiving a reduced sentence in his own federal drug case.

With respect to the April 7 drug buy, Richards testified that Officer Shaffer with the

Knoxville Police Department gave him $300, instructing him to purchase two eight-balls[2] of crack

cocaine from Harris at his address at 1211 Pickett Avenue in Knoxville, Tennessee. Richards stated

that before he got into his car to drive to the address, Officer Shaffer searched him and his vehicle.

---

[1] Defendant-Appellant Marvin Harris was originally charged with federal crimes in the United States District Court for the Eastern District of Tennessee on July 1, 2008. [*See* District Court Record No. ("R.") 1.] On March 3, 2009, a Second Superseding Indictment issued against him. [R. 19.] The Second Superseding Indictment contained five counts. [*Id.*] Counts 1 and 2 charged Harris with knowingly and intentionally distributing crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C) on April 7, 2008, and April 9, 2008, respectively. [R. 19.] Count 3 charged him with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) & 924(e)(1). [R. 19.] Count 4 charged him with knowingly and intentionally maintaining a place of residence for the purpose of distributing crack cocaine in violation of 21 U.S.C. § 856(a)(1), and Count 5 charged him with knowingly possessing a firearm in furtherance of the drug trafficking crime charged in Count 4 in violation of 18 U.S.C. § 924(c)(1)(A)(i). [R. 19.]

[2] Richards testified that one eight-ball is 3.5 grams of crack cocaine.

Richards testified that when he arrived at the residence, Harris was outside trying to start a lawnmower. Richards made his request for drugs, and Harris entered the house, reemerging with a pill bottle half full of crack cocaine. The individual crack rocks were tied up in the corner pieces of plastic sandwich baggies. Richards testified that Harris did not have enough crack cocaine to fill his request, so Harris left in a brown Cadillac. When he returned, he entered the house, instructing Richards to remain on the porch. He then came back outside and gave Richards two eight-balls of crack cocaine in exchange for $250. Richards stated that Harris also provided him with his cellphone number. Richards then met officers, handing over the drugs and the cellphone number.

With respect to the April 9 drug buy, Richards testified that he placed a call from the police department to the number Harris gave him, telling Harris that he needed three eight-balls. Richards then called Harris a second time to arrange a place to meet, and they decided to complete the transaction at a Taco Bell. The phone calls Richards made to Harris were recorded and played for the jury; the jury also received transcripts of the calls that had been initialed by Richards after he reviewed them for accuracy.

Richards testified that Officer Shaffer drove him to a location within walking distance of the Taco Bell, searched him, and then gave him money to purchase the drugs. Richards stated that he saw Harris arrive at the Taco Bell in a white pickup truck. According to Richards, Harris then removed three baggies of crack cocaine from the middle console of the truck and handed them to Richards in exchange for cash. A video of this second alleged drug transaction was played for the jury. After the exchange, Richards returned to Officer Shaffer and handed over the drugs.

On cross-examination, Richards testified that he never saw Harris with guns or ammunition. He also admitted that he was arrested with eleven rocks of cocaine on April 12, 2008. Richards stated that at the time of his testimony, charges were pending against him in state court as a result of that arrest.

Officer Shaffer also testified at Harris's trial. He stated that he received information in February of 2008 that Harris was distributing crack cocaine from the Pickett Avenue residence, and he corroborated Richards's testimony concerning the April 7 and 9 controlled drug buys. He also discussed how a CI and a CI's vehicle are searched prior to a controlled drug buy.

In addition, Officer Shaffer described a search of the Pickett Avenue residence that occurred on August 4, 2008. Officer Shaffer testified that in the bedroom of the home, officers found adult male shoes, male clothing, and mail addressed to Harris. They also found two boxes of plastic sandwich baggies, one opened and one unopened, one plastic baggie containing numerous precut baggie corners, and, in a trash can, several plastic baggies without corners. Officer Shaffer testified that the search uncovered two firearms, a shotgun wrapped in a larger male's t-shirt in the closet in the bedroom, and a .45 pistol in the dresser on the right side of the bedroom underneath some male clothing. The search also led to the discovery of digital scales in the bedroom and a single individually-packaged rock of crack cocaine in the couch in the living room.

Officer Shaffer testified that Harris left the Pickett Avenue residence in a white pickup truck registered in his name shortly before the search commenced. Officers stopped the vehicle and searched it, recovering a pill bottle with thirty-one individual packages of crack cocaine and a large

amount of United States currency. Officers also recovered a cellphone from Harris with the same number that Richards called on April 9, 2008, to arrange the drug buy.

On the third day of trial, the jury retired to deliberate and returned with a verdict of guilty on all counts. The United States Probation Office ("USPO") then prepared a Presentence Investigation Report ("PSR"). The PSR classified Harris as an armed career criminal under 18 U.S.C. § 924(e). As a result, the PSR calculated Harris's total offense level to be 33. Additionally, it determined his criminal history category to be IV. The PSR noted that Harris faced a fifteen-year minimum sentence of imprisonment for being a felon in possession of a firearm, *see* 18 U.S.C. § 924(e)(1), as well as a five-year minimum for possessing a firearm in furtherance of a drug trafficking crime, to run consecutive to his sentence on the other counts of conviction, *see* 18 U.S.C. § 924(c)(1)(A)(i). Accordingly, the PSR calculated Harris's guideline sentencing range to be 248 to 295 months.

On December 3, 2009, after hearing from counsel for Harris, counsel for the United States, and Harris himself, the district court sentenced Harris to imprisonment for a total of 260 months, followed by six years of supervised release. Specifically, the court sentenced Harris to 200 months on the first four counts, to be served concurrently, and sixty months on the last, to be served consecutively. Harris timely filed a Notice of Appeal from the district court's judgment.

## II.

### A.

We "review a challenge to the sufficiency of the evidence *de novo*, and consider 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Seymour*, 468 F.3d 378, 388 (6ᵗʰ Cir. 2006) (quoting *United States v. Tocco*, 200 F.3d 401, 424 (6ᵗʰ Cir. 2000)) (emphasis in original); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We are "bound to make all reasonable inferences and credibility choices in support of the jury's verdict." *United States v. Hughes*, 895 F.2d 1135, 1140 (6ᵗʰ Cir. 1990). Additionally, "[c]ircumstantial evidence and direct evidence are accorded the same weight . . . ." *United States v. Sherlin*, 67 F.3d 1208, 1214 (6ᵗʰ Cir. 1995) (citation omitted).

Harris argues that there was insufficient evidence to convict him on the drug distribution counts because the United States relied on the "incredible testimony" of a cooperating felon and circumstantial evidence. Harris notes that Richards was facing a substantial federal sentence of his own when he began cooperating with the Knoxville Police Department. He further notes that no officer was able to watch the actual exchange of drugs in person or on video, and that Richards was arrested just days after the alleged transactions with Harris for possessing crack cocaine he purchased from an unknown source. Harris suggests, then, that Richards framed him for the crimes.

In spite of Harris's arguments to the contrary, the United States presented plenty of evidence from which a rational juror could have concluded that Harris was guilty of distributing crack cocaine. For example, during trial, the parties stipulated that the rock-like substance Richards handed over to Officer Shaffer and that officers found in the console of Harris's pickup truck several months later was indeed crack cocaine. Further, as noted previously, the jury heard testimony that an officer searched Richards before each of his alleged drug transactions with Harris. Additionally, the jury

listened to the recordings of phone conversations between Richards and Harris setting up the April 9, 2008 drug buy, and they saw Harris and Richards on video meeting at the Taco Bell. Because the jury was made aware of the charges facing Richards, and therefore his motivation for serving as a CI against Harris, they were able to fully assess his credibility. Thus, there is no reason to disturb the jury's verdict on the first two counts due to insufficient evidence.

Harris also argues that there was insufficient evidence to convict him of maintaining the 1211 Pickett Avenue residence for the purpose of drug trafficking. Again, his argument is without merit. During trial, the parties stipulated that Harris signed the rental application and real-estate lease pertaining to the residence. In *United States v. Russell*, 595 F.3d 633, 642-43 (6th Cir. 2010), this court held that a defendant maintains a place "for the purpose of" drug trafficking in violation of 21 U.S.C. § 856 if drug distribution was a "significant or important reason" for which the defendant rented or used the premises. In other words, a drug transaction does not have to occur inside the residence for a defendant to be convicted of violating the statute. Here, the jury heard testimony that tools for weighing and packaging drugs were found in the Pickett Avenue home, and that over thirty plastic baggies of crack cocaine were found in Harris's truck shortly after he left the residence. Additionally, the jury heard testimony that Harris initially went inside the home and returned with a pill bottle half full of crack cocaine when he sold drugs to Richards on April 7, 2008, and they heard that the drug transaction between the two men eventually occurred on the porch. From this evidence, a rational juror could find that drug distribution was a "significant or important" reason that Harris maintained the Pickett Avenue residence.

Finally, Harris argues that there was insufficient evidence to convict him of the firearms charges. With regard to the charge of being a felon in possession of a firearm, the parties stipulated that Harris was a convicted felon. Thus, Harris can only argue that there was not enough evidence for the jury to find that he possessed the guns recovered from the bedroom of the Pickett Avenue residence. The jury heard testimony, however, that both guns were found in a bedroom that contained mail addressed to Harris, along with clothing and shoes that appeared to belong to an adult male. Further, they heard that Harris rented the home and left it shortly before the search began. Thus, even without fingerprints or other direct evidence, a rational juror could find that Harris possessed, actively or constructively, one or both of the firearms.

The second firearms charge rests on knowingly possessing a firearm in furtherance of a drug trafficking crime or, in this case, knowingly possessing a firearm in furtherance of maintaining a place of residence for the purpose of distributing crack cocaine. In order to be possessed "in furtherance of" an offense, a "weapon must promote or facilitate the crime." *United States v. Mackey*, 265 F.3d 457, 460-61 (6th Cir. 2001). There must be "a specific nexus between the gun and the crime charged," and "the firearm must be strategically located so that it is quickly and easily available for use." *Id.* at 462. Other relevant factors include "whether the gun was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found." *Id.* Here, the firearms were found in the bedroom, along with digital scales and other evidence consistent with drug trafficking activity. Both guns were operable and readily accessible. Thus, a reasonable juror could conclude that Harris

possessed the weapons to protect the residence and the drug trafficking activity occurring within it. *See id.* at 462-63.

Accordingly, Harris's argument that the United States failed to present sufficient evidence is rejected. His conviction is affirmed.

**B.**

Next, Harris suggests that the sentence imposed by the district court is unreasonable because the court failed to consider his request for a downward departure or variance based on his age and medical conditions. In both a Sentencing Memorandum filed prior to his sentencing and at the sentencing itself, counsel for Harris made arguments for the statutory minimum sentence of twenty years based on his client's age[3] and medical problems. In response, counsel for the United States pointed the court to Harris's criminal history, spanning "nearly four decades," and stated that his advanced age did not "negate the danger that he poses." Harris also told the court that he has "been in trouble with the law just about all the days I could remember."

In sentencing Harris to incarceration for a period of 260 months, the district court stated that it had considered the nature and circumstances of the offenses, as well as the history and characteristics of the defendant. The court noted its concern about Harris's lengthy criminal history, stating that the sentence imposed affords adequate protection to the public. Additionally, the court stated that given Harris's "prior history of recidivism . . . [its] sentence will afford adequate

---

[3]Harris was fifty-eight years old at the time of sentencing. [R. 64 at 15.]

deterrence and promote respect for the law." The court further found that the sentence provides Harris with the opportunity to obtain medical treatment.

Generally, we review procedural and substantive "challenges to the district court's sentencing determination for reasonableness under an 'abuse-of-discretion standard.'" *United States v. Martinez*, 588 F.3d 301, 324 (6th Cir. 2009). Under this standard, a sentence may be procedurally unreasonable if the district court failed to "provide some indication that the court considered the defendant's arguments in favor of a lower sentence and the basis for rejecting such arguments." *Id.* at 325. "[A] district court's failure to address each argument head-on will not lead to automatic vacatur," however, so long as the context and record make the court's reasoning clear. *United States v. Liou*, 491 F.3d 334, 339 n. 4 (6th Cir. 2007).

In *United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004), we announced a new procedural rule "requiring district courts, after pronouncing the defendant's sentence but before adjourning the sentencing hearing, to ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised." If this question is asked, and if the relevant party does not raise any objections at this time, plain-error review applies "to those procedural-reasonableness arguments that were not preserved in the district court." *United States v. Freeman*, 640 F.3d 180, 186 (6th Cir. 2011), *rev'd on other grounds*, 131 S. Ct. 2685 (2011); *see also Bostic*, 371 F.3d at 872-73; *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc). In reviewing for plain-error, we require a defendant to show an obvious or clear error that affected his

substantial rights and the fairness, integrity, or public reputation of the judicial proceedings. *Vonner*, 516 F.3d at 386.

Here, after stating Harris's sentence, the district court asked both parties if they had any objections. In other words, the court asked the *Bostic* question. The district court did so, however, *before* stating its reasons for the sentence imposed. This may have provided Harris with a meaningful opportunity to raise the objections he now raises on appeal. After all, Harris's counsel could have objected on the ground that he had not yet heard the district court's reasoning, and thus he did not know whether the court had considered his arguments regarding his client's age and medical conditions. Or, perhaps even more appropriately, he could have reserved answering the question until after he heard the court's reasoning. We caution, however, that the better practice would be to provide the parties with a chance to raise any objections not previously raised after stating the sentence and the rationale for that sentence.

In this case, we need not decide whether the district court's question was sufficient under *Bostic* because Harris's sentence is procedurally reasonable under both the abuse-of-discretion and the plain-error standards. Although the district court did not directly address Harris's argument for a lesser sentence based on his physical condition, the court indirectly addressed it by noting that Harris will be able to receive medical treatment in prison. Further, by referencing his lengthy criminal record and history of recidivism, the court implicitly rejected Harris's argument that his age weighed in favor of a shorter sentence. On this record, the court's reasoning is clear and there is no obvious or plain error.

11

To the extent that Harris argues that his sentence is substantively unreasonable, that argument also fails. We have held that "sentences within a properly calculated Guidelines range are afforded a rebuttable presumption of reasonableness, and the defendant bears the burden of rebutting this presumption." *Martinez*, 588 F.3d at 328. Harris's sentence is within the Guidelines range. His argument that the district court failed to consider his age and/or medical conditions is insufficient to rebut the presumption that his sentence is substantively reasonable. Accordingly, we affirm Harris's sentence.[4]

## III.

For the reasons stated above, Harris's conviction and sentence are **AFFIRMED**.

---

[4]In their briefs, both parties note that Harris's consecutive sentence on the last firearms charge is not in line with the Sixth Circuit's decision in *United States v. Almany*, 598 F.3d 238 (6th Cir. 2010). Since the submission of those briefs, however, the Supreme Court has clarified that the consecutive sentence is appropriate. *See Abbott v. United States*, 131 S. Ct. 18 (2010).