NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0550n.06

No. 16-5342

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,      )

         )

   Plaintiff-Appellee,      )

         )

      v.      )

         )

CESAR EDGARDO MARISCAL FELIX,      )

         )

   Defendant-Appellant.      )

         )

**FILED**

Oct 03, 2017

DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

BEFORE: SUHRHEINRICH, GRIFFIN, and KETHLEDGE, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Cesar Edgardo Mariscal Felix pleaded guilty to five drug-related charges stemming from his participation in a cocaine distribution network operating in Kentucky, and the district court sentenced him to 126-months' imprisonment. On appeal, he contends the district court erred by not suppressing evidence he claims were fruits of an illegal warrantless search of a drug house and of a race-based seizure, and that the district court erred in not granting a "safety valve" reduction in violation of 18 U.S.C. § 3553(f). Finding these contentions meritless, we affirm.

I.

In February 2013, Oklahoma law enforcement personnel stopped a semi-truck loaded with approximately ninety-three kilograms of cocaine that was destined for Lexington,

Kentucky. The truck's driver agreed to cooperate with authorities, and arranged to deliver the drugs in the normal course (with the cocaine replaced by a sham product). The driver described the cargo's recipient as a "Hispanic male approximately in his late 30s with short hair" who "would drive an S10 styled pickup truck light in color."

While under surveillance, the driver met the man in the pickup at the designated delivery location in Lexington and exchanged his boxes of "cocaine" for the man's boxes that agents later discovered contained over $1.8 million in heat-sealed bags. Agents followed the pickup as it drove away from the deal, with one Lexington Police Department detective identifying the driver as "a clean-cut male Hispanic with short hair." The pickup eventually drove into a garage attached to a house and closed the garage door. Agents entered the home, discovered the man was nowhere to be found, and began canvassing the immediate vicinity. (They also stopped and arrested a driver of a Toyota Corolla who appeared to be providing surveillance or observing the transaction.)

Shortly thereafter, an officer observed a Hispanic male "walking quickly" through a nearby shopping plaza and in a direction away from the residence. It was just after 8:00 p.m., and none of the businesses appeared to be open. The individual was wearing a "real lightweight" hooded shirt, despite the windy and twenty-degree February weather.

This combination of facts raised suspicion for the officer, so he got out of his patrol vehicle and asked the individual—later identified as defendant Felix—if he could speak with him. Felix agreed and explained to the officer that "he had been dropped off in the [front part of the] parking lot." This response raised even more suspicion for the officer, who had observed Felix coming from the opposite portion of the lot, so the officer detained Felix. Other agents

eventually arrived on scene, with one identifying Felix as an individual seen walking through the neighborhood and another confirming with the truck driver that Felix was the man in the pickup.

A grand jury indicted Felix and others on various conspiracy, drug possession and distribution, and money-laundering charges. Contending that his seizure at the shopping plaza was illegal because the officer stopped him solely because of his ethnicity, Felix moved to suppress evidence arising from his seizure. The district court denied the motion following a suppression hearing.

Defendant pleaded guilty to the charges without the benefit of a plea agreement. The probation officer's presentence report recommended a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) based upon the presence of a firearm in the drug house's master bedroom. The district court adopted this recommendation over defendant's objection, denied defendant's related request for "safety valve" relief from some of his statutory-minimum sentences under U.S.S.G. § 5C1.2(a)(2), and calculated defendant's Guidelines range as 168 to 210 months. It then varied below the Guidelines for reasons not important here and imposed a 126-month sentence. Felix now appeals.

## II.

As his first claim on appeal, Felix contends the district court erred by failing to suppress evidence resulting from both the search of the house and his detention at the shopping plaza. Because he failed to assert a challenge to the former below, we review that claim for plain error. *United States v. Yancy*, 725 F.3d 596, 600 (6th Cir. 2013). As for his preserved detention claim, we review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Calvetti*, 836 F.3d 654, 661 (6th Cir. 2016).

Preliminarily, the government contends the nature of Felix's unconditional guilty plea precludes any preservation of the right to appeal the district court's suppression ruling. We decline to resolve the suppression issue on this ground. For one, the district court indicated when it accepted Felix's guilty plea that he was not "waiv[ing] any of [his] rights with respect to any issue of this case." Nonetheless, Felix's suppression arguments are without merit.

The district court did not plainly err in its ruling with respect to the warrantless search of the drug house.[1] "[P]olice may not enter a private residence without a warrant unless both 'probable cause plus exigent circumstances' exist." *United States v. McClain*, 444 F.3d 556, 561 (6th Cir. 2005) (citation omitted). Having confirmed Felix consummated a drug transaction with a cooperating witness, the agents who entered the drug house had "reasonable grounds for belief" that criminal activity was afoot. *See, e.g.*, *United States v. Brown*, 449 F.3d 741, 745 (6th Cir. 2006). Indeed, Felix does not contest this point. Rather, Felix claims "there were no exigent circumstances for breaking into the defendant's home" because the agents were not in "hot pursuit," and "[t]here was no reason to believe that he would destroy any evidence."

On plain error review, we disagree. The agents here had a sufficient exigent circumstance—an "urgent need to prevent evidence from being lost or destroyed." *United States v. Sangineto–Miranda,* 859 F.2d 1501, 1511 (6th Cir. 1988). In order to justify such an entry, an officer must have "(1) a reasonable belief that third parties are inside the dwelling; and (2) a reasonable belief that these third parties may soon become aware the police are on their trail, so that the destruction of evidence would be in order." *Id.* at 1512. It was reasonable for the agents

---

[1]Law enforcement did not search the house following entry and confirmation Felix was no longer in the house, and instead sought and received a subsequent search warrant. Felix seeks not to suppress any of the evidence gathered from the house, but rather claims the district court erred in not suppressing "the information that the defendant was not in the house."

to believe Felix was in the house as they watched him pull into the garage and close the door. More importantly, it was reasonable for the agents to believe Felix would be aware that police were closing in—the Drug Enforcement Administration had replaced his intended cargo of cocaine with a sham product that, when discovered, would have alerted Felix that something was amiss, another one of the co-conspirators (the driver of the Toyota Corolla) had been stopped by police a short distance away, and agents massed outside the house as they prepared for the raid.

Nor did the district court err with respect to the detention of Felix at the shopping plaza. Felix's claim that police stopped him "solely on considerations of race" is belied by the district court's factual findings. True, the officer knew he was looking for a Hispanic male, but "[c]ommon sense dictates that, when determining whom to approach as a suspect of criminal wrongdoing, a police officer may legitimately consider race as a factor if descriptions of the perpetrator known to the officer include race." *United States v. Waldon*, 206 F.3d 597, 604 (6th Cir. 2000). Here, the district court correctly acknowledged other factors played into the officer's decision to get out of his vehicle, question Felix, and then detain him:

> [The officer] had a description of a Hispanic male, he observed a Hispanic male in the vicinity of a known drug deal who was underdressed on a cold February night walking away from the drug scene at the end of a shopping center at which the businesses were closed. Then after the officer stopped and asked the defendant questions, the defendant lied or misled him as to where he [came] from. . . . So when I consider the totality of the circumstances, . . . the stop and the arrest did not violate the defendant's Fourth Amendment rights[.]

Therefore, the district court did not err in declining to suppress evidence obtained as a result of the entry into the drug house and Felix's seizure at the shopping plaza.

### III.

Felix's second claim on appeal fares no better. He contends the district court should have imposed a sentence without regard to statutory minimums under 18 U.S.C. § 3553(f)'s "safety

valve" provision. We review a district court's decision not to grant a safety-valve reduction for clear error because the determination "is based on factual findings." *United States v. Haynes*, 468 F.3d 422, 426 (6th Cir. 2005).

There are five conditions that must be met before a defendant is eligible for a safety-valve reduction. *See* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2(a). The condition at issue here is whether defendant "possess[ed] a firearm . . . in connection with the offense." 18 U.S.C. § 3553(f)(2); U.S.S.G. § 5C1.2(a)(2). "The defendant bears the burden of showing eligibility for the safety valve by a preponderance of the evidence." *United States v. Stewart*, 306 F.3d 295, 327 n.19 (6th Cir. 2002). As such, Felix "must prove by a preponderance of the evidence that he did not possess a firearm in connection with the offense." *United States v. Bolka*, 355 F.3d 909, 912 (6th Cir. 2004) (citation and ellipses omitted).[2]

Police found a myriad of drug crime instruments at the house, including "numerous electronic devices . . . , a drug debt ledger, heat sealers, four money counters, a set of digital scales, and a Smith & Wesson semiautomatic pistol." The firearm was in the master bedroom's entertainment center, in close proximity to the heat sealer, loose cash, and ammunition. Police

---

[2]Felix does not challenge the district court's § 2D1.1 firearm enhancement. We acknowledge our published case law regarding whether a § 2D1.1 enhancement precludes a § 5C1.2 safety valve reduction appears to be in some tension. *Compare United States v. Johnson*, 344 F.3d 562, 565 (6th Cir. 2003) ("The district court's determination that [defendants] possessed a firearm [for purposes of § 2D1.1] rendered them ineligible to receive a two-level reduction because they did not meet the conditions of § 5C1.2(a)(2)."), *with Bolka*, 355 F.3d at 913 (distinguishing *Johnson*, and stating, "we expressly disclaim the proposition that conduct warranting a § 2D1.1(b)(1) sentence enhancement *necessarily* forecloses the application of a § 5C1.2(a) 'safety valve' reduction as this *per se* conclusion does not necessarily follow from the different evidentiary standards of §§ 2D1.1(b)(1) and 5C1.2(a)(2)"). *See also United States v. Patterson*, 145 F. App'x 988, 992–94 (6th Cir. 2005) (criticizing and declining to follow *Bolka* as inconsistent with *Johnson*). Given our discussion in text regarding Felix's failure to establish by a preponderance of the evidence that he did not possess a firearm in connection with the offense, we need not address this tension.

also "found several pieces of mail matter, financial documents, and receipts in the name of 'Cesar Felix' at the residence." Given this, and other circumstantial evidence, the district court's conclusion that Felix failed to prove by a preponderance of the evidence that he did not constructively possess the Smith & Wesson during the offense was not clearly erroneous. Felix's attempt to prove otherwise is unavailing.

IV.

For these reasons, we affirm the judgment of the district court.