NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0521n.06

No. 21-3916

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Dec 15, 2022
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

TIM WYSE,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF
OHIO

OPINION

Before: LARSEN, DAVIS, and MATHIS, Circuit Judges.

LARSEN, Circuit Judge. Tim Wyse pleaded guilty to two federal charges arising from his involvement in a large-scale drug conspiracy in Toledo, Ohio. On appeal, he challenges the district court's application of a two-level weapons enhancement and the court's determination that he was not eligible for a sentence reduction under the safety-valve provision. We AFFIRM the judgment of the district court.

I.

Between 2017 and 2019, Tim Wyse, along with seven others, received heroin, cocaine, and fentanyl from Toledo-based supplier Pedro Negrin. Negrin would either deliver these narcotics to Wyse at his home in Toledo, Ohio, or send a courier to do the same. Wyse would then distribute the narcotics. Law enforcement used wiretaps, cooperating sources, and surveillance to investigate members of the drug conspiracy, and ultimately, attempted to serve an arrest warrant for Wyse at his home.

Investigators knocked and called for Wyse to open the door, but there was no response. Investigators believed Wyse was home because his car was in the driveway. But after forcing entry, investigators found no one inside. They did, however, observe several long guns while securing the home. Believing these firearms were illegally possessed because Wyse had a prior felony conviction, investigators obtained a warrant to search Wyse's home. The search yielded two long guns, one handgun, seven bags of assorted pills, suspected crack cocaine, a digital scale, and ammunition. Lab analysis confirmed that the assorted pills contained over the counter medication and 405 white tablets of morphine (40.9 grams). Lab analysis also verified that 2.75 grams of crack cocaine was present.

Wyse and thirty others were charged for their involvement in this large-scale drug scheme. Wyse was charged with one count of conspiracy to distribute and to possess with intent to distribute heroin, cocaine, cocaine base (crack cocaine), and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(B), (b)(1)(C) and 21 U.S.C. § 846. He was also charged with one count of using a communication facility to facilitate a drug conspiracy, in violation of 21 U.S.C. § 843(b). Wyse pleaded guilty, admitting that he was responsible for distributing at least 500 grams of cocaine and at least 100 grams of heroin, which required a sentence of 5 to 40 years' imprisonment. *See* 2 U.S.C. § 841(b)(1)(B).

The presentence report calculated the advisory Guidelines range at 63 to 78 months' imprisonment, which included a two-point enhancement under U.S.S.G. § 2D1.1(b)(1) for possessing dangerous weapons. The district court applied the weapons enhancement because it found that Wyse possessed firearms in connection with his offense. The court then determined that Wyse was not eligible for relief under the safety valve provision found in 18 U.S.C. § 3553(f).

For the first time, Wyse asked the court to suppress any evidence discovered in his home, citing a Fourth Amendment violation. The district court rejected the suppression argument.

The district court ultimately varied downward, sentencing Wyse to 60 months' imprisonment—the mandatory minimum—for the drug conspiracy and 48 months for using a communications facility to facilitate the drug conspiracy, to run concurrently. The court imposed a 4-year term of supervised release. Wyse timely appealed, challenging the imposition of the firearm-possession enhancement and the court's determination that Wyse was not "safety valve" eligible.

## II.

We begin with Wyse's challenges to the weapons enhancement. The Guidelines provide that a court may impose a two-level sentencing enhancement on a drug offense "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). Commentary to the Guidelines explains that this "enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S. Sentencing Guidelines Manual § 2D1.1 cmt. n.11(A) (U.S. Sent'g Comm'n 2018); *see also United States v. McCloud*, 935 F.3d 527, 531 (6th Cir. 2019).

Wyse first argues that the enhancement should not apply because, in his view, the firearms were discovered in violation of the Fourth Amendment. The government contends that Wyse waived this argument by entering an unconditional guilty plea to the charged offense. Neither party has it quite right.

Start with the government. The government is right that "a valid guilty plea 'bars any subsequent non-jurisdictional attack on the conviction.'" *United States v. Schaffer*, 586 F.3d 414, 420 (6th Cir. 2009) (quoting *United States v. Martin*, 526 F.3d 926, 932 (6th Cir. 2008)). As the

government explains, that is because the "defendant has solemnly admitted in open court that he is in fact guilty of the offense." Appellee Br. at 11 (quoting *Tollett v Henderson*, 411 U.S. 258, 267 (1973)). But Wyse is not attempting to attack his *conviction*; he challenges the conduct used to enhance his *sentence* under the advisory Sentencing Guidelines. That conduct—possessing firearms—formed no part of his guilty plea. He was charged with, and admitted to, drug offenses only. Indeed, that is why the government had to prove the facts supporting the firearms enhancement at sentencing; if Wyse had admitted the relevant sentencing conduct as part of his guilty plea, no further proof would be needed. *See United States v. Louchart*, 680 F.3d 635, 637–38 (6th Cir. 2012). Here, Wyse's guilty plea did not admit to the conduct supporting the firearms enhancement, so the plea does not foreclose Wyse's evidentiary attack on his sentence.

But even so, Wyse cannot prevail because the exclusionary rule does not apply at sentencing. *United States v. Jenkins*, 4 F.3d 1338, 1345 (6th Cir. 1993); *see also United States v. Carmack*, 426 F. App'x 378, 383–84 (6th Cir. 2011); *United States v. Ryan*, 236 F.3d 1268, 1271–72 (10th Cir. 2001) (collecting cases). So whether the search was valid or not, the district court was free to consider the evidence obtained for sentencing purposes. *Jenkins*, 4 F.3d at 1345. We have recognized a possible exception to this rule—when officers illegally seized the evidence for the very purpose of enhancing the defendant's sentence—but Wyse makes no such allegation. *See id.* Thus, the district court did not err in considering the firearms discovered in Wyse's home when applying the enhancement.

Arguably, we should end our discussion here. Wyse objected to the presentence report on the Fourth Amendment ground alone; he did not object that the enhancement should not apply, even if the guns found in the home were considered. The same is true of the sentencing memorandum Wyse filed with the district court. Though one sentence in that memorandum, at

the end of the Fourth Amendment objection, states that "[t]here is no allegation that any of his weapons were *used* in the offense," there is no other development of this argument—and it states the wrong legal standard anyway. The enhancement presumptively applies so long as Wyse "actually or constructively possessed" the weapons during relevant conduct. *United States v. West*, 962 F.3d 183, 187–88 (6th Cir. 2020). Wyse may defeat the presumption only by showing that "it is clearly improbable that the weapon was connected with the offense." *Id.* at 188 (quoting U.S.S.G. § 2D1.1 cmt. n.11(A)).

Discussion at the sentencing hearing focused on the objection the defendant raised—the alleged Fourth Amendment violation. Referring the court to the case cited in its brief (*Jenkins*), the government maintained that any Fourth Amendment issues were "not relevant to sentencing" and that the motion was untimely in any event. The government then briefly explained its position regarding Wyse's constructive possession of the guns found in his home at the time when drugs were also found. In response, Wyse's counsel first admitted that the guns "were in his house," and again asserted, without further elaboration, that there "was no indication they were used for drugs, they weren't used in any of the transactions."

Now, on appeal, Wyse argues for the first time that the record "is inadequately developed" to support the conclusion that he even constructively "'possessed' the three weapons" that were recovered from his house or that he possessed them "during relevant conduct." Because Wyse failed to present these specific objections in the district court, we review his sentence for plain error only. *United States v. Stall*, 581 F.3d 276, 283 (6th Cir. 2009). Wyse cannot meet that standard.

"Constructive possession of an item is the 'ownership, or dominion or control' over the item itself, 'or dominion over the premises' where the item is located." *United States v. Hill*,

79 F.3d 1477, 1485 (6th Cir. 1996) (quoting *United States v. Sanchez*, 928 F.2d 1450, 1460 (6th Cir. 1991) (abrogated on other grounds)). We have repeatedly held that constructive possession may be shown when a weapon is found in a defendant's personal living space. *See United States v. Brown*, 856 F. App'x 36, 40 (6th Cir. 2021) (quoting *United States v. Malone*, 308 F. App'x 949, 952 (6th Cir. 2009) (collecting cases)). We have also held that constructive possession may be either sole or joint; thus, the fact that Wyse's wife or anyone else visiting Wyse's home may have had access to the firearms does not negate the inference that Wyse did as well. *Malone*, 308 F. App'x at 954. Where multiple individuals occupy a residence, however, this court requires "an additional statement or circumstance to connect the defendant to contraband found on the premises." *United States v. Latimer*, 16 F.4th 222, 225–26 (6th Cir. 2021) (citing *United States v. Crumpton*, 824 F.3d 593, 609 (6th Cir. 2016)). The government has met this "minimal" burden. *Id.* at 226. More specifically, the government presented evidence showing that investigators seized two rifles from a basement bedroom in Wyse's home, a revolver from a case located inside a vent, and ammunition from a living room hutch. Drug paraphernalia was found in Wyse's living room, and drugs were discovered in the same living room hutch that contained the ammunition. Wyse admitted that he and his wife own the home where the weapons, ammunition, and drugs were recovered. He also admitted that the three firearms, which were tested and operable, were in his home at the time of his arrest and that narcotics were delivered there. While we do not know the precise location of the vent that held the handgun, we know that mail addressed to Wyse was found in that same vent. This evidence suffices to establish that Wyse constructively possessed the weapons, even though he was not the only occupant of the premises. *See United States v. Bailey*, 553 F.3d 940, 944 (6th Cir. 2009) ("Proof that 'the person has dominion over the premises where the firearm is located' is sufficient to establish constructive possession." (quoting *United States*

*v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998))); *United States v. McFarland*, 766 F. App'x 301, 308 (6th Cir. 2019) (finding that the defendant exercised dominion over the residence, including the attic where the firearms were hidden, when the defendant's name was on the lease; his personal belongings were found throughout the home; evidence suggested that he could have retrieved the weapons whenever he wanted; and even if accessibility was limited, the firearms were found near drugs); *United States v. Harris*, 443 F. App'x 111, 114–16 (6th Cir. 2011) (affirming a felon-in-possession conviction where the government presented evidence that firearms were found in a bedroom containing mail addressed to the defendant and clothing and shoes that appeared to belong to an adult male). The district court did not clearly err by concluding that Wyse constructively possessed the firearms found in his home. *See West*, 962 F.3d at 187 ("As to the first element of whether a weapon was possessed, this is a factual finding that we review under the clear-error standard.").

Nor did the district court err by finding that Wyse possessed the weapons during relevant conduct. Wyse was charged with participating in a drug-trafficking conspiracy from 2017 through 2019. On March 20, 2019, law enforcement observed Wyse meeting with Negrin in Wyse's driveway. Wyse states that seven months before his October 2019 arrest (so, in March of 2019) he was "recorded accepting drugs from Mr. Negrin" and also "took responsibility for four or five [other] transactions in 2019 shortly before the conspiracy ended." Appellant Br. at 11, 23. When law enforcement searched Wyse's home in October 2019, they seized multiple firearms, ammunition, morphine pills, crack cocaine, and a digital scale. At sentencing, Wyse admitted that at least one of the firearms that was found "was there for 30 years." These facts establish that Wyse possessed dangerous weapons while he carried out the "course or common scheme" of drug trafficking. *See United States v. Finley*, 239 F. App'x 248, 254–55 (6th Cir. 2007) (holding that

because guns and drugs were found in the same location—the home of the defendant—the court did not err in applying the § 2D1.1(b)(1) enhancement); *United States v. Faison*, 339 F.3d 518, 520–21 (6th Cir. 2003) (weapons and drug proceeds and paraphernalia found together fourteen months after end of charged conspiracy were relevant conduct justifying § 2D1.1(b)(1) enhancement); *United States v. Mitchell*, 63 F. App'x 224, 228–30 (6th Cir. 2003) (affirming enhancement when, months after the charged conduct, officers found the gun with uncharged drugs).

It therefore falls to Wyse to prove that it is "clearly improbable" that the weapons were connected to the offense. U.S.S.G. § 2D1.1 cmt. n.11(A); *McCloud*, 935 F.3d at 531. This argument is forfeited as well—Wyse's unsupported assertion below that the guns were not "used for drugs, they weren't used in any of the transactions" is not enough to preserve his current arguments for appeal. So we review this claim for plain error too. Again, Wyse cannot meet the standard.

In assessing the firearms' connection to the offense, we consider a variety of factors, including "the proximity of the firearm to the drugs, the type of firearm involved, whether the firearm was loaded, and any alternative purpose offered to explain the presence of the firearm." *United States v. Moses*, 289 F.3d 847, 850 (6th Cir. 2002). Wyse argues that the weapons were unloaded, were found in "obscure corners and out of arms reach," and were discovered seven months after Wyse was first connected to the drug distribution network. But, as we have explained, the firearms need not be within arm's reach, and the enhancement is properly applied even when firearms are discovered months after the charged conduct. Here, Wyse admitted to involvement in "four or five transactions" shortly before the conspiracy ended in October of 2019, when the guns were located from his house. And although the recovered weapons were unloaded, they were

operable and ammunition was found in the living room hutch where bags of crack cocaine and morphine pills were kept. Wyse has not shown that it is "clearly improbable" that the weapons discovered in his home were connected to his participation in the drug-trafficking conspiracy. The district court properly applied the two-level enhancement.

IV.

Wyse next challenges the district court's determination that he was not eligible for the "safety valve" reduction under 18 U.S.C. § 3553(f). *See also* U.S.S.G. § 5C1.2. The safety valve permits a district court to sentence a defendant below the statutory mandatory minimum if the defendant can show that he satisfies five criteria, including that he did not "possess a firearm . . . in connection with the offense." 18 U.S.C. § 3553(f)(2). The district court determined that Wyse could not make this showing because the § 2D1.1 firearms enhancement applied.

This court has not spoken with a single voice about whether application of the § 2D1.1 enhancement categorically precludes the safety valve reduction. *See United States v. Felix*, 711 F. App'x 259, 262 n.2 (6th Cir. 2017) (noting the tension). *United States v. Johnson* suggests that it does. 344 F.3d 562, 565 (6th Cir. 2003) ("The district court's determination that [defendants] possessed a firearm [for purposes of § 2D1.1] rendered them ineligible to receive a two-level reduction because they did not meet the conditions of § 5C1.2(a)(2)."). But a later case, *United States v. Bolka*, says that's not true. 355 F.3d 909, 913 (6th Cir. 2004). Purporting to distinguish *Johnson*, *Bolka* says that a defendant who cannot show, under § 2D1.1, that it is "clearly improbable that the weapon was connected to" his drug trafficking offense might still be able to show "by a preponderance . . . that the firearm was not connected to the offense so as to satisfy" the safety valve. *Id.* at 914. Cases decided after *Bolka* dispute whether *Johnson* or *Bolka* applies. *Compare United States v. Patterson*, 145 F. App'x 988, 992–94 (6th Cir. 2005) (declining to

follow *Bolka* as inconsistent with *Johnson*) *with United States v. Rosas-Jimenez*, 468 F. App'x 527, 529 (6th Cir. 2012) (stating that a defendant "bears the burden of proving entitlement to the [§ 5C1.2] reduction by a preponderance of the evidence"). We need not untangle this knot. Even if we were to apply *Bolka*—the more defendant friendly position—any error the court committed would be harmless. *See Bolka*, 355 F.3d at 916. For the reasons discussed above, Wyse has not shown, even by a preponderance, "that he did not possess a firearm in connection with his drug offenses." *Id.* at 915. Indeed, in the district court, Wyse made no effort on that score whatsoever. Therefore, even if the district court erred in applying a categorical rule, any error was harmless. Wyse has not shown his eligibility for the safety valve reduction.

\* \* \*

We AFFIRM.