NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0019n.06

No. 23-5010

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Jan 17, 2024

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| CEDRIC THOMAS, | ) ) | |
| Defendant-Appellant. | ) ) | OPINION |
| | ) | |

BEFORE: GRIFFIN, BUSH, and READLER, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Cedric Thomas claims the district court erroneously concluded he was ineligible for a safety-valve reduction under U.S.S.G. § 2D1.1(b)(18) solely based on its separate finding that he possessed a firearm sufficient for application of a § 2D1.1(b)(1) enhancement. Because any such error was harmless, we affirm.

I.

Thomas trafficked oxycodone in Chattanooga, Tennessee, for the better part of two years. Each week, he received via mail hundreds of pills and sold them for up to $35 per pill, resulting in profits of nearly $7,000 per week. In his two years of distributing oxycodone, Thomas estimates that he sold over 30,000 pills and took in approximately $780,000.

In October 2019, the United States Postal Inspection Service intercepted three of Thomas's illicit parcels—two that were sent to him had hundreds of pills and one that he mailed contained

$10,450 cash to purchase 2,000 pills. Thomas quickly confessed. A resulting search of his residence yielded a safe with $10,000 in cash and two compact, loaded handguns, and an additional $33,375 in cash stored under his bed. Thomas was charged with and pleaded guilty pursuant to a plea agreement to possession with intent to distribute oxycodone in violation of 21 U.S.C. §§ 841(a)(1)(a), 841(b)(1)(C).

One of the main disputes at sentencing was the significance of Thomas's possession of the two seized firearms. The presentence report recommended that the district court enhance his base-offense level by two for possessing a dangerous weapon under U.S.S.G. § 2D1.1(b)(1). Thomas objected, claiming he legally purchased the weapons from a friend who no longer wanted them and that there was no evidence linking his gun possession to his offense conduct. And Thomas relatedly asserted that because he did not "possess a firearm . . . in connection with the offense," § 5C1.2(a)(2), he was separately eligible for a so-called safety-valve reduction under § 2D1.1(b)(18).

The district court overruled Thomas's objection to the § 2D1.1(b)(1) enhancement and found him ineligible for a safety-value reduction under § 2D1.1(b)(18). On the former, the district court found the enhancement applicable under the "fortress theory," which allows a court to "find a nexus between drugs and guns . . . if it reasonably appears that" the defendant's firearms "are to be used to protect the drugs or otherwise facilitate a drug transaction." *United States v. Crump*, 65 F.4th 287, 300 (6th Cir. 2023) (internal quotation marks omitted). The significant amounts of cash Thomas routinely exchanged while dealing drugs to his "numerous customers" over the course of two years and Thomas's age and declining physical abilities supported the conclusion that he possessed the firearms "to safeguard the money." Regarding the latter, the district court concluded that because the § 2D1.1(b)(1) enhancement applied, "[t]hat also means, then, that the

defendant does not qualify for the safety valve." Accordingly, it calculated defendant's Guidelines range as 108 to 135 months, varied downward to account for his age and reduced physical capacity, and ordered him imprisoned for a term of 68 months. Thomas timely appeals.

II.

The single issue on appeal is whether the district court erred when it concluded Thomas was ineligible for a safety-valve reduction under § 2D1.1(b)(18) solely based on its finding that he possessed a firearm sufficient for application of the § 2D1.1(b)(1) enhancement. Notably, Thomas does not claim error regarding the district court's § 2D1.1(b)(1) finding. Rather, he asserts that because *who* bears the burden of proof concerning firearm possession is different for the firearm enhancement (the government) and the safety valve (the defendant), the district court necessarily erred in finding him automatically ineligible for a safety-valve reduction without conducting a separate analysis. Although his argument has some support in our caselaw, *see United States v. Bolka*, 355 F.3d 909, 913 (6th Cir. 2004), any purported error committed by the district court was harmless.[1]

We begin with a brief overview of the two applicable Guidelines provisions. First, U.S.S.G. § 2D1.1(b)(1) increases a defendant's base-offense level for a drug-related conviction by two "[i]f a dangerous weapon (including a firearm) was possessed." To apply this enhancement, the government must establish, by a preponderance of the evidence, that (1) the defendant actually or constructively possessed the weapon; and (2) the possession occurred during the commission of the offense or relevant conduct. *United States v. West*, 962 F.3d 183, 187 (6th Cir. 2020). Upon that showing, the burden then shifts to the defendant to "demonstrat[e] that 'it is clearly improbable

---

[1]Because we resolve defendant's appeal on harmless-error grounds, we need not take up the government's position that we should review Thomas's appeal for plain error.

that the weapon was connected with the offense.'" *Id.* at 188 (quoting U.S.S.G. § 2D1.1 cmt. n.11(A)). A defendant's improbability burden represents "a higher quantum of proof" than the government's preponderance-of-the-evidence burden. *Bolka*, 355 F.3d at 914.

Second, the Guidelines' "safety valve" provision decreases a defendant's base-offense level by two if he satisfies certain criteria. *See* § 2D1.1(b)(18). The criterion at issue here is § 5C1.2(a)(2), that "the defendant did not . . . possess a firearm or other dangerous weapon . . . in connection with the offense." In contrast to the firearm-possession enhancement, it is the defendant's burden to make this showing, again by a preponderance of the evidence. *United States v. Stewart*, 306 F.3d 295, 327 n.19 (6th Cir. 2002).

Whether the difference in who bears the burden for a § 2D1.1(b)(1) firearm enhancement and a § 2D1.1(b)(18) safety-valve reduction means that the application of the former automatically makes a defendant ineligible for the latter is a question we have answered inconsistently. First, *United States v. Johnson* seemingly provided the answer, holding that "[t]he district court's determination that [the defendants] possessed a firearm [for purposes of § 2D1.1(b)(1)] rendered them ineligible to receive a two-level reduction because they did not meet the conditions of § 5C1.2(a)(2)." 344 F.3d 562, 565 (6th Cir. 2003). A year later, however, *Bolka* held otherwise. Despite acknowledging that "one could reasonably construe [*Johnson*'s] language as implicitly holding that the proper application of a § 2D1.1(b)(1) enhancement automatically precludes the application of a § 5C1.2(a) reduction," *Bolka* (in a footnote) cabined *Johnson* "to the particular facts of that case," in which the defendants did not meet their preponderance-of-the-evidence showings required for a safety-valve reduction. 355 F.3d at 913–14 & n.5. The *Bolka* court then categorically announced that "[t]he application of a § 2D1.1(b)(1) sentence enhancement does not necessarily preclude the application of a § 5C1.2(a) 'safety valve' reduction." *Id.* at 914.

Although some panels of our court have followed *Bolka*'s interpretation of *Johnson*, *see, e.g.*, *United States v. Barron*, 940 F.3d 903, 914 (6th Cir. 2019), at least one unpublished opinion has expressly disregarded it as inconsistent with *Johnson*, *see United States v. Patterson*, 145 F. App'x 988, 992–94 (6th Cir. 2005). Others have highlighted our court's conflicting approach to this issue, but declined to weigh in, resolving on other grounds. *See United States v. Wyse*, 2022 WL 17688488, at *4 (6th Cir. Dec. 15, 2022) (harmless error); *United States v. Felix*, 711 F. App'x 259, 262 n.2 (6th Cir. 2017) (clear error).

Today's appeal is not one that requires a solution to this conflict, for it does not present—to the extent one can exist—a fact pattern in which the gun-possession provisions apply favorably to both parties. Thomas did not have "an unloaded hunting rifle in the closet," *United States v. Hardin*, 248 F.3d 489, 501 (6th Cir. 2001), nor did he store only a small amount of drugs in his house, *cf. United States v. Seymour*, 739 F.3d 923, 930–31 (6th Cir. 2014). And he does not dispute that he possessed two concealable handguns that were loaded and stored in close proximity to the fruits of his drug trafficking—*substantial* amounts of cash. That is the typical pattern under which we link a found firearm to drug trafficking under the Guidelines. *See, e.g.*, *United States v. Taylor*, 648 F.3d 417, 432–33 (6th Cir. 2011); *see also United States v. Clay*, 346 F.3d 173, 179 (6th Cir. 2003); *cf. United States v. Volkman*, 797 F.3d 377, 391 (6th Cir. 2015) ("When a weapon is found in a locked safe placed alongside contraband, there is sufficient evidence for a jury to determine that a defendant is in possession of a firearm in furtherance of a drug-trafficking crime.").

In resisting this conclusion, defendant explains that he came into possession of the firearms after purchasing them from a friend who "had decided to get rid of [them]." Even assuming we can consider as evidence this statement in his objections to the presentence report, how Thomas acquired the weapons says nothing about whether he used them in connection with his oxycodone

trafficking. *See Taylor*, 648 F.3d at 433 ("An alternative explanation for the presence of a gun does not preclude that gun from *also* being used to facilitate a drug offense.") (brackets and internal quotation marks omitted). And true, some of the money discovered in his bedroom was not subject to forfeiture as proceeds of Thomas's drug trafficking, but tens of thousands of dollars in cash were. Finally, Thomas argues that he could meet his burden of proof by simply pointing to the government's lack of evidence of drugs in the house or of Thomas brandishing the guns. But the district court considered that lack of evidence and *still* found that Thomas possessed the guns to further his drug trafficking. In sum, the government has demonstrated "*with certainty* that the error at sentencing did not cause [Thomas] to receive a more severe sentence." *United States v. Gillis*, 592 F.3d 696, 699 (6th Cir. 2009) (citation omitted).

We therefore hold that any error committed by the district court in denying Thomas a safety-valve reduction was harmless because Thomas failed to establish by a preponderance of the evidence that he did not possess the firearms in connection with the offense.

III.

For these reasons, we affirm the district court's judgment.